1    GREGORY G. ISKANDER, Bar No. 200215
     giskander@littler.com
2    WILLIAM J. KIM, Bar No. 336837
     wkim@littler.com
3    LITTLER MENDELSON P.C.
     Treat Towers
4    1255 Treat Boulevard, Suite 600
     Walnut Creek, California 94597
5    Telephone:   925.932.2468
     Fax No.:     925.946.9809
6
     Attorneys for Defendant
7    GONSALVES & SANTUCCI, INC.

8                          UNITED STATES DISTRICT COURT

9                       NORTHERN DISTRICT OF CALIFORNIA

10

11   ELMER N. RODRIGUEZ, an individual and on      Case No.  3:21-cv-07874-LB
     behalf of all others similarly situated,
12                                                  NOTICE OF MOTION & MOTION TO
                    Plaintiffs,                     DISMISS PURSUANT TO FED. R. CIV. P.
13                                                  12(b)(6); MEMORANDUM OF POINTS
            v.                                      AND AUTHORITIES IN SUPPORT
14
     GONSALVES & SANTUCCI, INC., a California
15   corporation; and DOES 1 through 100, inclusive,
16                  Defendants.                     Hearing Date:   December 9, 2021
                                                    Time:           9:30 a.m.
17                                                  Judge           Hon. Laurel Beeler
                                                    Location:       Via Zoom
18                                                  Webinar ID:     161 469 8626
                                                    Password:       546984
19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

## <u>NOTICE OF MOTION AND MOTION</u>

2   TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

3        PLEASE TAKE NOTICE that on December 9, 2021 at 9:30 AM, or as soon thereafter as the

4   matter can be heard, in Courtroom B – 15th Floor, located at 450 Golden Gate Avenue, San Francisco,

5   CA 94102, Defendant Gonsalves & Santucci, Inc. ("Defendant") will and hereby does move the Court

6   for an order dismissing Plaintiff's Complaint with prejudice under Federal Rule of Civil Procedure

7   12(b)(6). Defendant brings the present Motion on the ground that Plaintiff's claims are preempted by

8   the Labor Management Relations Act, 28 U.S.C. § 185, *et seq*. ("LMRA").

9        This Motion is based on this Notice, the following Memorandum of Points and Authorities,

10  Defendant's Request for Judicial Notice and all accompanying exhibits, and all the pleadings, papers,

11  and records on file herein, as well as any other argument or evidence presented at or before the time

12  of the hearing on this Motion.

13  / / /

14  / / /

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

# TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ........................................................................................................ 1

II.    STATEMENT OF ISSUE TO BE DECIDED .......................................................... 1

III.   STATEMENT OF FACTS ......................................................................................... 1

    A.   Plaintiff's Allegations in the Complaint ......................................................... 1

    B.   The Collective Bargaining Agreement Applies to Plaintiff's Employment ................ 2

        1.   The CBA Reflects the Parties' Agreement as to Wages ................................. 3

        2.   The CBA Reflects the Parties' Agreement to Minimum Hourly Rates, Meal and Rest Periods, and Hours of Work ................................................ 3

        3.   The CBA Reflects the Parties' Agreement to Provide Specific Wage Statements ................................................................. 4

        4.   The CBA Reflects the Parties' Agreement to Expense Reimbursements ........ 5

        5.   The CBA Reflects the Parties' Agreement to Provide Vacation Pay ............. 5

        6.   The CBA Controls Plaintiff's Derivative Claims ......................................... 5

        7.   The Grievance Procedures Apply to the Alleged Violations of the CBA ................................................................ 6

IV.    LEGAL ARGUMENT ............................................................................................... 7

    A.   This Court Should Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ................................................................. 7

    B.   Section 301 of the LMRA Preempts All of Plaintiff's Claims ................................. 8

        1.   Plaintiff's Right to Overtime (First Cause of Action) Exists Solely as a Result of the CBA ................................................................. 9

        2.   Plaintiff's Right to Meal Periods (Third Cause of Action) Exist Solely as a Result of the CBA ................................................................. 10

        3.   Plaintiff's Rights to Rest Periods (Fourth Cause of Action) Under the CBA Offer Equivalent Protection Provided by IWC Wage Order No. 16 ................................................................. 12

        4.   Plaintiff's Failure to Pay Timely Final Wages Claim (Fifth Cause of Action) is Subject to Preemption as a Result of Alternative Pay Arrangements Provided by the CBA ........................................... 13

        5.   Plaintiff's Right to Vacation or Personal Time Off (Eighth Cause of Action) Exists Solely as a Result of the CBA ........................................... 14

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

i

**TABLE OF CONTENTS**
(CONTINUED)

PAGE

6.    The Remaining Claims Substantially Depend on Analysis of the CBA........ 15

a.    Plaintiff's Claim for Unpaid Wages (Whether Overtime, Straight Time, or Minimum Wages) (First, Second, and Fifth Causes of Action) Substantially Depend on Analysis of the CBA ........................................................................................... 15

b.    Plaintiff's Rest Period Claim (Fourth Cause of Action) Substantially Depends on Analysis of the CBA ............................... 16

c.    Plaintiff's Failure to Pay Business Expenses (Seventh Cause of Action) Substantially Depends on Analysis of the CBA ................. 17

d.    The Waiting Time Penalties and Final Pay (Fifth Cause of Action), Inaccurate Wage Statements (Sixth Cause of Action), and Unlawful Conduct (Ninth Cause of Action) Claims Depend Entirely on the Underlying Unpaid Wages, Meal and Rest Period, and Unpaid Business Expenses and Vacation Claims.......... 18

C.    Plaintiff's Complaint Should Be Dismissed Without Leave to Amend Because Plaintiff Failed to Exhaust the CBA's Grievance Procedures ................................... 19

V.    CONCLUSION............................................................................................................ 20

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

ii

## I.    INTRODUCTION

This action involves a dispute under a collective bargaining agreement (the "CBA") between Plaintiff Elmer N. Rodriguez ("Rodriguez" or "Plaintiff") and Defendant Gonsalves & Santucci, Inc. ("G&S" or "Defendant").  Specifically, Rodriguez alleges Defendant violated certain California state wage and hour laws. (*See generally* Dkt 2-1, Ex. A ("Compl.")).  Rodriguez, who is a member of Local Union No. 377 of the District Council of Iron Workers of the State of California and Vicinity (hereinafter the "Union"), conspicuously omits the existence of the applicable CBA in his Complaint. However, each of Plaintiff's causes of action alleged in the Complaint involves a right conferred solely by the CBA or substantially depends on analysis and interpretation of the CBA.  Therefore, Section 301 of the Labor Management Relations Act ("LMRA") preempts the claims alleged in the Complaint. Moreover, the CBA expressly requires Rodriguez to follow a specific grievance procedure in the event that any dispute arises out of his employment with G&S.  It is undisputed that Rodriguez has yet to follow this grievance procedure, and thus his failure warrants dismissal of his claim under Fed. R. Civ. P. 12(b)(6). These deficiencies are inherent to the fundamental nature of Plaintiff's lawsuit and are therefore incurable.

## II.    STATEMENT OF ISSUE TO BE DECIDED

The issue raised by this motion is whether the Court should dismiss the Complaint in its entirety with prejudice because Section 301 of the LMRA preempts Plaintiff's claims and because Plaintiff fails to state a claim under Section 301.

## III.    STATEMENT OF FACTS

### A.    Plaintiff's Allegations in the Complaint

Plaintiff alleges that he was employed by Defendant as an ironworker on construction projects in California from February 2020 through December of 2020. (*See* Compl. ¶ 2).  The Complaint, asserted as a class action, includes the following nine causes of action: (1) failure to pay overtime as required by Labor Code §§ 510, 1194, 1199 and IWC Wage Orders; (2) failure to pay minimum wages as required by Labor Code §§ 1197, 1199 and IWC Wage Orders; (3) failure to provide meal periods

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

or pay meal period premiums as required by Labor Code §§ 226.7, 512 and IWC Wage Orders; (4) failure to provide rest periods or pay rest period premiums as required by §§ Labor Code 226.7 and IWC Wage Orders; (5) failure to pay all wages due at termination as required by Labor Code §§ 201-203 and IWC Wage Orders; (6) failure to provide accurate wage statements as required by Labor Code § 226 and IWC Wage Orders; (7) failure to pay business expenses as required by Labor Code § 2802 and IWC Wage Orders; (8) failure to pay vacation time as required by Labor Code § 227.3; and (9) violation of Business & Professions Code § 17200. *See* Compl. ¶¶ 30-92.  As set forth below, each of these claims are covered by a valid collective bargaining agreement.

### B.      The Collective Bargaining Agreement Applies to Plaintiff's Employment

At all relevant times, Rodriguez is and has been a member of District Council of Iron Workers of the State of California and Vicinity, Local Union 377. (Request for Judicial Notice ("RJN"), Exs. A and B).  Local 377 dispatched Rodriguez as an ironworker to work on projects for Defendant in California.  (Compl., ¶2; *see also* RJN Exs. A and B, Sec. 3, Craft Jurisdiction).  As a member of the Union, the applicable CBAs in effect during his employment are entitled "Agreement Iron Worker Employers State of California and a Portion of Nevada And District Council of Iron Workers of the State of California and Vicinity July 1, 2017 – June 30, 2020," (*See* RJN, Exhibit A, hereinafter "2017 CBA"), and  "Agreement Iron Worker Employers State of California and a Portion of Nevada And District Council of Iron Workers  of the State of California and Vicinity July 1, 2020 – December 31, 2024." (*See* RJN, Exhibit B, hereinafter "2020 CBA[1]")  These CBAs govern the terms and conditions of Rodriguez's employment at G&S.  The stated purpose of the CBA is:

> This Agreement is entered into by collective bargaining between the Employers and the Union to prevent strikes and lockouts and to facilitate peaceful adjustment of grievances and disputes between the Employers and the workmen in this trade and to prevent waste, unnecessary and avoidable delays and expenses; for the purpose, at all times, of securing for the Employers sufficient skilled workmen and, so far as possible, to provide for labor's continuous employment, such employment to be in accordance with the conditions herein set forth and at wages herein

---

[1] For the Court's ease of reference, Defendant will primarily refer and cite to the 2020 CBA as the CBA at issue because Plaintiff brought forth the instant lawsuit during the coverage periods set forth in the 2020 CBA. Defendant will refer to the 2017 CBA for any meaningful or relevant distinctions, if any.

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

> agreed upon, also that stable conditions may prevail in the building industry and building costs may be as low as possible, consistent with fair wages and by which these ends may be accomplished.

(2020 CBA, p. 12).

The parties intended the CBA to be a comprehensive agreement.  It provides that the Union is the sole and exclusive bargaining representative of the Ironworker employees covered by the CBA pursuant to its craft jurisdiction. (*See* 2020 CBA, p. 12). The agreement recognizes the Union has signatory and collective bargaining representations of the covered employees. (*Id*.).  Specifically, the CBA reinforces the exclusivity and scope of the agreement by detailing a long and exhaustive list of all types of work subject to the terms and provision of the CBA. (*Id*., Sec. 3, Craft Jurisdiction, pp. 5-9).

### 1.    The CBA Reflects the Parties' Agreement as to Wages

The CBA details the minimum hourly and overtime compensation of Plaintiff and the alleged putative class members. (*See* 2020 CBA, Sec. 7, Wage Rate and Other Remuneration at p. 33).  Indeed, the CBA expressly provides minimum hourly wage rates and scheduled wage increases for Plaintiff and the putative class members. (*Id*., Schedule Apprentices Hourly Wage Rates and Journeyman Iron Workers Total Hourly Wage & Fringe Benefit Package ("Wage Rate Schedule"), pp. 73-80).

### 2.    The CBA Reflects the Parties' Agreement to Minimum Hourly Rates, Meal and Rest Periods, and Hours of Work

The CBA provides in very specific detail the Union employees' hours of work, meal and rest periods, and details a specific right to premium and overtime pay. It sets eight hours as constituting a day's work which occur between the hours of 5:00 am and 5:00 pm and identifies which hours will be paid at one and one-half times or twice the straight hourly rate. (*See* 2020 CBA, Sec 6. Work Hours Per Day). The CBA further reflects the parties' agreement regarding meal and rest periods:

> If workmen are required to work continuously for more than four and one-half (4 ½ ) hours or five (5) hours when the normal starting time is established before 8:00 a.m. without an opportunity for lunch during the period of a normal shift, they shall receive overtime pay for work after the four and one-half (4½ ) hours, (or five (5) hours) until opportunity to take time for lunch is afforded and shall thereafter be allowed a reasonable opportunity to eat lunch on the individual employer's time. (Example: 6:00 a.m. starting time - 5 hours; 7:00 a.m. starting time - 5 hours; 8:00 a.m. starting time – 4½ hours.) *Id*.

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

3

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

**Rest Periods** - Every individual employer shall authorize and permit all employees to take rest periods, which insofar as practicable, shall be in the middle of each work period. Nothing in this provision shall prevent an individual employer from staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods to coincide with breaks in the flow of work that occur in the course of the workday. The authorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes per rest time for every four (4) hours worked, or major fraction thereof. Rest periods shall take place at individual employer designated areas, which may include or be limited to the employee's immediate work area

…

Any employee who completes a shift and is required to work more than two (2) hours over-time at the end of a shift will be permitted a one-half (1/2) hour meal period as follows:

He shall be permitted a one-half (1/2) hour meal period for which he will receive regular over-time pay during which time no work shall be permitted and/or one-half (1/2) hour's pay at the regular overtime rate in lieu thereof.

(2020 CBA, Sec. 6, Work Hours Per Day, at pp. 18-23).

> **3.    The CBA Reflects the Parties' Agreement to Provide Specific Wage Statements**

The CBA provides the manner and method of how pay will be distributed and addresses the content of those wage statements.

**Section 8. Pay Day**
The regular pay day shall be once a week on such day agreed upon between the individual employer and the appropriate Local Union. Wages shall be paid before quitting time on the job, in cash, by check or other legal tender. An electronic fund transfer or a no fee, no limit debit card may be offered by the individual employer. The method of payment must be authorized by the employee in writing and consistent with state laws.

…

Accompanying each payment of wages shall be a separate statement identifying the individual employer, showing the total earnings, the amount of each deduction, the purposes thereof and net earnings.

(2020 CBA, pp. 31-32).

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

4

### 4.     The CBA Reflects the Parties' Agreement to Expense Reimbursements

Plaintiff alleges that Defendant failed to reimburse specific expenses including costs in purchasing mandatory work uniforms, safety equipment, laundering mandatory work uniforms, mileage and/or gas costs, use of cellular phones, and tools. (*See* Compl, ¶. 16).  Section 9 of the CBA also details the type of reimbursable expenses Plaintiff and the alleged putative class would be entitled to for business expenses such as mileage pay, travel reimbursements, and company transportation. (2020 CBA, Sec. 9, Expenses Out of Town, pp. 35-38).  In addition to the parties' agreement regarding specific expenses, the CBA provides that "[w]orkmen shall furnish for their own use all necessary hand tools to enable them to effectively install all work" while "[t]ools broken on the job such as drills, taps, hacksaw blades, etc. shall be replaced by the individual employer." (*See* 2020 CBA, Sec. 24. Basic Provisions at B). The CBA also provides that proper "safe housing, casing or tube shall be provided for any and every means, method, appliance or equipment employed to transmit or give signals, directing work or operation of any and various devices in connection with work being done by Iron Workers." (*Id*., at F). When using automatic or semiautomatic equipment and/or welding continuously, G&S will provide safety equipment. (*Id*. at I).

### 5.     The CBA Reflects the Parties' Agreement to Provide Vacation Pay

Section 11 of the CBA also expressly provides a contribution of $5.30 per hour for each hour paid for and/or worked made to the California Field Iron Workers Vacation/Personal Time Off (PTO) Plan. (*See* 2020 CBA, Sec. 11, Vacation / Personal Time Off (PTO) Plan ("Vacation Plan"), p. 42). The CBA references the existence of the California Field Iron Workers Vacation/Personal Time Off (PTO) Plan created by the Agreement and Declaration of Trust dated August 16, 1959 and amended February 21, 2018. (*See id*.). According to the "Frequently Asked Questions" section of the California Field Iron Worker Vacation Trust Funds website, a "Board of Trustees, evenly divided between Union and Management representatives, administers the Plan under a Trust Agreement which set forth the rules and regulations adopted for the Plan's operation." (RJN, Ex. C, "Frequently Asked Questions"). It further prohibits employers from providing vacation benefits directly. (*Id*.).

### 6.     The CBA Controls Plaintiff's Derivative Claims

Rodriguez claims that G&S violated Labor Code 203 and owes waiting time penalties due to

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

5

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

the failure to compensate him for earned and unpaid wages due. (*See* Complaint, ¶¶ 64, 66).  He further claims G&S failed to timely pay him final wages and provide accurate wage statements. (*See* Complaint, ¶¶ 59-74).  As the causes of actions allege, these are alleged as derivative claims as they rely on the alleged underlying wage and hour violations: Plaintiff alleges G&S failed to provide overtime wages (Compl., ¶ 66) and further alleges he and the putative class members are "entitled to payment of all wages earned and unpaid prior to discharge immediately upon termination." (Compl., ¶¶ 61).  Thus, these claims depend on the CBA provisions regarding the Parties' agreement as to payment of wages, meal and rest periods, and business expenses. (*See* 2020 CBA Secs. 6, 7, and 8).  Similarly, any alleged violation of Business and Professions Code § 17203 and alleged failure to provide accurate wage statements are directly predicated upon the alleged violations of provisions of the California labor code – *all* of which are covered by the CBA. (*See* Complaint, ¶¶ 67-74, 88-92; 2020 CBA Secs. 6, 7, 8, 9, and 11).

### 7.    The Grievance Procedures Apply to the Alleged Violations of the CBA

Finally, the CBA provides procedures detailing the process for the resolution of the exact disputes at issue in Rodriguez's complaint. (2020 CBA, Sec 28., Grievance Procedure, p. 65). Specifically, the CBA requires creation of a Board of Adjustment for the settlement of disputes which are comprised of two Union representatives and two Employer representatives. *Id*. After the creation of the Board of Adjustment, the selected Board is required to organize within three working days or as soon as practical, elect a Chairman and a Secretary, and adopt rules of procedure which shall bind the parties.

> Said Board shall have the power to adjust any differences that may arise regarding the meaning and enforcement of this Agreement. Within fifteen (15) days of the time any dispute is referred to it by either party, said Board shall meet to consider such dispute. If the Board cannot agree on any matter referred to it, the members thereof within three (3) days shall choose a fifth member who shall have no business or financial connection with either party. The decisions of said Boards shall be determined by a majority of their members and, pending such decisions, work shall be continued in accordance with the provisions of this Agreement.

(*See id.*)

Rodriguez notably omits from his Complaint any allegation that he followed the grievance procedures set forth in the CBA.

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

6

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## IV.     LEGAL ARGUMENT

### A.     This Court Should Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A complaint that does not establish entitlement to relief under any reasonable interpretation is properly dismissed under Fed. R. Civ. P. 12(b)(6).  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007); *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement of relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted). When analyzing a motion under Rule 12(b)(6), the court must decide whether the facts alleged, if true, would entitle the plaintiff to some form of legal remedy. "[I]f it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," dismissal under Rule 12(b)(6) is appropriate. *Globespan, Inc. v. O'Neill*, 151 F.Supp.2d 1229, 1232 (C.D. Cal. 2001) (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  Furthermore, in evaluating a motion to dismiss, the court need "not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

Although Rule 8 of the Federal Rules of Civil Procedure does not require "detailed factual allegations," it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A pleader must do more than merely plead labels, conclusions, and the formulaic elements of a cause of action. *Id*, *citing Twombly*, 550 U.S. at 557. Threadbare recitals of the elements of a claim, supported by mere conclusory statements, do not suffice. *Id*. at 663, *citing Twombly*, 550 U.S. at 555. The court need not accept as true bald assertions, conclusions, inferences, or legal conclusions "couched" or "masquerading" as facts. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (quoting *Kendall v. Visa U.S.A., Inc.* 518 F.3d 1042 (9th Cir. 2008)).

Moreover, when ruling on a motion to dismiss, a court is not strictly limited to the four corners

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

7

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

of the pleading.  In addition to a complaint's express allegations, a court may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). *see also Johnson v. Sky Chefs, Inc*., 2012 WL 4483225, at *1 n.1 (N.D. Cal. Sept. 27, 2012) ("Courts routinely take judicial notice of the governing collective bargaining agreement where necessary to resolve issues of preemption."). Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which its own pleadings relies.  *Cavanaugh v. County of San Diego*, 2020 WL 6703592 *1, n. 1 (S.D. Cal., Nov. 12, 2020) (citing *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3rd Cir. 1993)).  In this case, therefore, this Court may consider the CBA which governs the parties' relationship even though Rodriguez conspicuously failed to attach it to, or mention its existence in, his Complaint.

"The court must dismiss a complaint that does not assert, or fails to plead sufficient facts to support, a cognizable legal theory. *Marquez v. Toll Glob. Forwarding (USA) Inc*., 2018 WL 3218102, at *3-4 (C.D. Cal. June 28, 2018) (granting a motion to dismiss meal and rest claims on section 301 preemption grounds) (citing Fed. R. Civ. P. 12(b)(6) and *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  Applying these standards to Rodriguez's Complaint, the Court should dismiss it.  His allegations do not state a valid claim for relief.

## B.    Section 301 of the LMRA Preempts All of Plaintiff's Claims

The United States Supreme Court has unequivocally held that where the resolution of state law claims requires interpretation or application of a collective bargaining agreement, those claims are preempted by Section 301 of the Labor Management Relations Act, 28 U.S.C. § 185 *et seq*. *See Lingle v. Norge Division of Magic Chef*, 486 U.S. 399 (1988) ("[I]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law … is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute."). To be sure, "[t]he preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement and any state claim whose outcome

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

depends on analysis of the terms of the agreement." *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

The Ninth Circuit has articulated a two-prong test to analyze whether Section 301 preemption applies in *Burnside v. Kiewit Pacific Corp.*, 491 F.3d 1053, 1059-60 (9th Cir. 2007). Under the first prong (step 1), the court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted and [the court's] analysis ends there." *Id.* at 1059 (citation omitted).

However, if the court determines the right underlying the state claim(s) "exists independently of the CBA" the court then proceeds to the second prong (step 2), which examines whether the right is "substantially dependent on analysis of a collective bargaining agreement." *Burnside*, 491 F.3d at 1059-60. In determining whether the second prong is met (whether the claim is "substantially dependent" on a CBA) the Court must evaluate whether the claim can be resolved by "'look[ing] to'" versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." *Id.* at 1060. Section 301 of the LMRA preempts Plaintiff's alleged claims as shown below because the claims involve rights conferred solely by the CBA and/or require substantial interpretation or application of the CBA.

### 1. Plaintiff's Right to Overtime (First Cause of Action) Exists Solely as a Result of the CBA

Section 301 of the LMRA preempts Plaintiff's claim for unpaid overtime wages. *See Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019). In *Curtis,* the Ninth Circuit held that the CBA satisfied the requirements of Labor Code section 514, and therefore a plaintiff's right to overtime existed solely as a result of the CBA, preempting the claim under Section 301. *Id.* at 1154. Labor Code section 514 provides as follows:

> Sections 510[2] and 511[3] do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours

---

[2] Cal. Lab. Code §510 provides applicable overtime compensation rates.
[3] Cal Lab. Code §511 provides applicable overtime compensation rates for alternative workweek schedules.

LITTLER MENDELSON, P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

9

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    worked and a regular hourly rate of pay for those employees of not less
2    than 30 percent more than the state minimum wage.

3    Cal. Lab. Code § 514.

4         The applicable CBA expressly provides for the wages, hours or work, and working conditions,

5    and thus, satisfies the requirements of section 514 for the following reasons:

6    - The CBA expressly provides for wages, hours of work, and working conditions (2020 CBA
7      Secs. 6-9, 11, pp. 18-38, 73-80)

8    - The CBA expressly provides for meal periods (*Id.*, Sec. 6, Work Hours Per Day, p. 20);

9    - The grievance procedure applies to any dispute arising out of the CBA (*Id.*, Sec. 28,
     Grievance Procedure, pp. 65-66);

10   - The CBA provides premium wages for overtime (*Id.*, Sec. 6, Work Hours Per Day and
     Wage Rate Schedule); and

11   - The CBA provides a base rate of pay more than 30 percent of the applicable California
12     state minimum wage[4] (*Id.*, pp. 73-80).

13   (2020 CBA, Secs. 6-9, 11, pp. 18-38, 73-80).

14        The CBA also provides premium wage rates for all overtime hours worked and a regular rate

15   of pay 30 percent more than the applicable state minimum wage. (*Id.*, at pp. 73-80). Since Labor Code

16   sections 510 and 511 do not apply, Plaintiff's right to unpaid overtime wages exists solely as a result

17   of the CBA, and any claim for unpaid overtime is preempted by Section 301 of the LMRA.

18        **2.    Plaintiff's Right to Meal Periods (Third Cause of Action) Exist Solely as a
             Result of the CBA**

19

20        Similarly, Plaintiff's right to meal periods are conferred solely by the CBA because the CBA

21   satisfies the statutory exemption to meal periods at Labor Code section 512(e). *See Coria v. Recology,

22   Inc.*, 63 F. Supp. 3d 1093, 1097 (N.D. Cal. 2014) ("[I]f Section 512(e) applies, then 512(a) does not

23   apply, and plaintiff's claimed right to meal periods cannot be said to be based on state law.").

24        In California, the requirements for meal periods are set forth at subdivisions (a) and (b) of

25   Labor Code section 512. These sections do not apply to an employee covered by a valid collective

26   _____
     [4] The California state minimum wage for 26 employees or more was and is as follows: $10.50 in
27   2017, $11.00 in 2018, $12.00 in 2019, $13.00 in 2020 and $14.00 in 2021. All of Defendant's
     Ironworkers were paid at an hourly rate $18.25 or more from 2017 to 2021 (*See* RJN, Ex. A, 2017
28   Agreement.) Under the 2017 CBA, effective April 26, 2017, the base hourly rate was $18.25. (*See*
     RJN, Ex. A, 2017 CBA, pp. 76-96) Thus, the base hourly rate established by the CBAs always
     exceeded the state minimum wage by 30 percent.

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

10

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

bargaining agreement that satisfies the requirements of Labor Code section 512(e) as follows:

> Subdivisions (a) and (b) do not apply to an employee specified in subdivision (f) if both of the following conditions are satisfied:
>
> (1) The employee is covered by a valid collective bargaining agreement.
>
> (2) The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

Cal. Lab. Code § 512(e).

In addition, Labor Code section 512, subdivisions (a) and (b) do not apply to an employee who is exempt from meal or rest or recovery period requirements pursuant to other state laws, including, but not limited to, a statute or regulation, standard, or order of the Industrial Welfare Commission. Cal. Lab. Code § 226.7(e).

The CBA here satisfies the statutory exemption to meal periods at section 512(e) of the Labor Code. As an initial matter, G&S employed Plaintiff as an ironworker covered by a valid collective bargaining agreement, satisfying the requirement of Labor Code section 512(e)(1) and 512(f)(2). (*See generally* Complaint; *see also generally* 2020 CBA).  As described in section 1 above, the CBA satisfies the requirements of section 512(e)(2) because it expressly provides for the wages, hours or work, and working conditions.

Thus, the applicable CBA satisfies the exemption under Labor Code section 512(e) to the meal period requirements of Labor Code sections 512(a)-(b), and Plaintiff's right to meal periods exists solely as a result of the CBA. The language and intent of the Parties' meal period provisions in the CBA supports this conclusion as they provide as follows:

> If workmen are required to work continuously for more than four and one-half (4 ½ ) hours or five (5) hours when the normal starting time is established before 8:00 a.m. without an opportunity for lunch during the period of a normal shift, they shall receive overtime pay for work after the four and one-half (4 ½ ) hours, (or five (5) hours) until opportunity to take time for lunch is afforded and shall thereafter be allowed a reasonable opportunity to eat lunch on the individual employer's time. (Example: 6:00 a.m. starting time - 5 hours; 7:00 a.m. starting time - 5 hours; 8:00 a.m. starting time – 4 ½ hours.)

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

11

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

(2020 CBA, Sec. 6, Work Hours Per Day, p. 20).

In sum, the CBA satisfies the meal period exemption at Labor Code section 512(e), and G&S is exempt from the meal period requirements of Labor Code section 512, subdivisions (a) and (b). Consequently, Plaintiff's right to meal periods exists solely as the result of the CBA. *See Mireles v. Paragon Syst. Inc.*, 2014 WL 4385453, at *5-6 (S.D. Cal. Sept. 4, 2014) (granting summary judgment as to meal period and overtime claims, finding the exemptions in §§ 512(e) and 514 were met and the claims therefore arose under the CBA); *Pyara v. Sysco Corp.*, 2016 WL 3916339, at *3-4 (E.D. Cal. July 20, 2016) (granting motion for judgment on the pleadings because plaintiff's meal break claim failed as a matter of law based on Section 512(e) exemption); *Araquistain v. Pac. Gas & Elec. Co.*, 229 Cal. App. 4th 227, 236, 238 (2014) (granting summary judgment to defendant, holding it was not required to provide off-duty meal periods pursuant to § 512(a) because it met the exemption criteria under § 512(e)); *Zayerz v. Kiewit Infrastructure West*, 2018 WL 582318, at *4 (C.D. Cal. Jan. 18, 2018) (granting summary judgment based on application of the § 512(e) exemption); *Parker v. Cherne Contracting Corporation*, 2019 WL 359989 (N.D. Cal. Jan. 29, 2019) (granting motion to dismiss plaintiff's meal period claims on preemption grounds under § 301 of the LMRA after finding that the applicable CBA satisfied each of the conditions listed in Labor Code section 512(e).) For all of these reasons, Plaintiff's meal claims are preempted under step 1 of the *Burnside* test. *Burnside*, 491 F.3d 1053, 1059-60 (9th Cir. 2007).

### 3.   Plaintiff's Rights to Rest Periods (Fourth Cause of Action) Under the CBA Offer Equivalent Protection Provided by IWC Wage Order No. 16

Plaintiff's right to rest periods are conferred solely by the CBA because the CBA satisfies the exemption to rest periods expressly provided for in the California Department of Industrial Relations' Industrial Welfare Commission ("IWC") Order No. 16-2001 ("Wage Order No. 16"). Specifically, Wage Order No. 16 governs rest break periods in the construction industry for employers like Defendant.  It requires construction employers to provide rest periods at the rate of ten minutes net rest time for every four hours worked. IWC, §11. However, these rest period requirements do not apply "to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement provides equivalent protection." Wage Order No. 16, §11(E); *see also Zayerz v. Kiewit*

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

12

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

*Infrastructure West*, 2018 WL 582318, at *4 (granting summary judgment on rest period claim for finding equivalent protection in CBA). The rest period provisions in the CBA are nearly identical to those expressly provided for in Wage Order No. 16. (*Compare* 2020 CBA, Sec. 6, B-2 "Rest Periods" *with* IWC Wage Order No. 16 at §11). Because IWC Wage Order No. 16 §11 provides an exception for rest period requirements for construction industry employees covered by a CBA, Plaintiff's right to rest periods are conferred solely by the CBA.

### 4. Plaintiff's Failure to Pay Timely Final Wages Claim (Fifth Cause of Action) is Subject to Preemption as a Result of Alternative Pay Arrangements Provided by the CBA

"Labor Code Sections 201-204 do not apply if a collective bargaining agreement provides for different pay arrangements." *Gillette v. Stater Bros. Markets, Inc.*, 2019 WL 8017735, at *6 (C.D. Cal., 2019) (citing Cal. Lab. Code § 204(c)) ("However, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees."). Where a CBA provides alternate pay arrangements from those contained in the Labor Code, wage payment rights arise under the CBA and not state law. *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1201-02 (C.D. Cal. 2015) (finding Labor Code § 203 claim for wage statement penalties based on a violation of Section 301 preempted under the LMRA at step 1 of *Burnside*, where the parties agreed to alternate wage payment provisions.)

Here, Plaintiff alleges G&S failed to timely pay final wages, in violation of Labor Code sections 201-203. (*See* Dkt No. 2-1, Ex. A, ¶¶ 59 - 66.) The CBA provides that the "regular pay day shall be once a week on such day agreed upon between the individual employer and the appropriate Local Union." (2020 CBA, Sec. 8, Pay Day, p. 34).  It further provides that "[w]hen workmen are laid off, or discharged, they shall be laid off or discharged at the site of construction and paid in full in cash, by check or other legal tender immediately and, if required to go to some other point or to the office of the individual employer, the workmen shall be paid for time required to go to such places." (*Id*.). The CBA also contemplates penalties if an Iron worker is not paid during usual working hours.

> If workmen are not paid by their individual employer during the usual working hours, they shall receive the applicable overtime rate for all time after the regular working hours that they are required by the individual employer to remain on the job site on such regular pay day. If workmen are not required to remain on the job site on the regular pay day, they shall receive four (4) hours pay at the appropriate

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

13

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    overtime rate.

2    (*Id.*).

3    Thus, the CBA sets forth alternate pay arrangements from those contained in the Labor Code,

4    applying to both the regular payment of wages as well as payment of final wages. It even provides an

5    alternative penalty for failure to comply with its terms, which appears more generous than the penalties

6    provided for in Labor Code section 203. Accordingly, Plaintiff's wage payment rights arise under the

7    CBA and not state law. *Gillette*, 2019 WL 8017735 at *6; *Hall*, 146 F. Supp. 3d at 1201-02.

8    **5.    Plaintiff's Right to Vacation or Personal Time Off (Eighth Cause of Action) Exists Solely as a Result of the CBA**

9

10   Additionally, Section 301 of the LMRA preempts Plaintiff's claim for failure to pay all vested

11   vacation time at termination under Labor Code section 227.3 *See Gillette*, 2019 WL 8017735, at *6

12   (C.D. Cal., 2019) (finding a Section 227.3 vacation pay claim preempted by section 301 of the LMRA

13   under step 1 of *Burnside* because "the legality of [defendant's] alleged failure to pay vacation falls

14   under the purview of the CBA, not the California Labor Code.")

15   Unlike the statutory exemptions pertaining to overtime or meal period exemptions, Labor Code

16   section 227.3 does not place any qualifications on exempting a CBA vacation policy from its scope:

17   *Unless otherwise provided by a collective bargaining agreement*, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested

18   vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served;

19   provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination.

20

21   Cal. Lab. Code § 227.3 (emphasis added).

22   Here, the CBA references the existence of the California Field Iron Workers Vacation/Personal

23   Time Off (PTO) Plan created by the Agreement and Declaration of Trust dated August 16, 1959 and

24   amended February 21, 2018. (2020 CBA, Sec. 11 Vacation / Personal Time Off (PTO) Plan, p. 42).

25   Under the PTO Plan, the Board of Trustees administers vacation benefits for employees and strictly

26   prohibits employers from paying vacation benefits directly to the employees. (RJN, Ex. C, "Frequently

27   Asked Questions.") For each hour paid for and/or worked, G&S contributes a defined hourly rate to

28   the PTO Plan. (*Id.*). Because the CBA provides an alternative contract for paid vacation time, section

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

14

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

227.3 does not apply. *Gillette*, 2019 WL 8017735 at *7. Any claim Plaintiff may have pertaining to accrued, unpaid vacation time only arises under the CBA, and is preempted[5] by Section 301 of the LMRA. *Id.* (citing *Burnside*, 491 F.3d at 1059-60).

### 6.   The Remaining Claims Substantially Depend on Analysis of the CBA

Plaintiff's remaining causes of action substantially depend on an analysis of the CBA and thus the analysis proceeds under the second prong of the *Burnside* test. Section 301 preempts California state law claims that are substantially dependent upon interpretation of a CBA. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1155 (9th Cir. 2019); *Firestone v. Southern Cal. Gas. Co.*, 219 F.3d 1063, 1066-67 (9th Cir. 2000). This is so even where interpretation is required to evaluate the employer's defense to a plaintiff's state law cause of action. *Curtis*, 913 F.3d at 1152 (Section 301 "has such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'") (citing *Metro. Life Ins. v. Taylor*, 481 U.S. 58, 65 (1987)). Each of the following claims is substantially dependent upon the interpretation of the CBA.

### a.   Plaintiff's Claim for Unpaid Wages (Whether Overtime, Straight Time, or Minimum Wages) (First, Second, and Fifth Causes of Action) Substantially Depend on Analysis of the CBA

At the outset, Plaintiff's unpaid wages claims – first, second, and fifth[6] causes of action (Compl. ¶¶ 37-42, 59-65) – cannot be resolved without interpreting the applicable CBA. Here, the Court must evaluate the Parties' detailed agreement regarding the hours of work, hourly rates, work days, and shift work outlined at sections 6 through 8 of the CBA, along with the Wage Rate Schedule. (*See* 2020 CBA, Secs. 6-8, and pp. 73-80).

Plaintiff alleges that Defendant failed to pay minimum wages for certain activities—including

---

[5] Some district courts have found a separate right to vacation pay might exist even where a CBA applies, however the Section 227.3 claim was still held to be preempted under step 2 of *Burnside*. *See Jaco v. Winco Holdings, Inc.,* 2019 WL 1438069, at *6 (E.D. Cal. Mar. 31, 2019) ("plaintiff's claim requires analyzing the CBA and is therefore preempted under § 301 of the LMRA.") Thus, even if Plaintiff's right to vacation time did not arise under the CBA, it is nevertheless preempted by Section 301 of the LMRA since his entitlement to vacation requires analysis of the CBA.

[6] As provided above, the first and fifth causes of action are also preempted by satisfying Step 1 of *Burnside*.

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1    making phone calls or driving off the clock. (*See* Compl, ¶¶ 10, 11, 34, 40). However, the CBA

2    contemplates compensation for those activities as show-up expenses or as actual hours worked (*See*

3    2020 CBA, Sec. 6, Work Hours Per day pp. 21) and interpretation of the CBA will be critical to

4    determining if Plaintiff's wage claims have merit. (*Id.*; Complaint, ¶ 27). At a minimum, the Court

5    will need to interpret the intended meaning of the phrases "actual hours worked" and "show up

6    expenses," and determine whether that language covers these particular activities that Plaintiff alleges

7    is at issue.

8    Hence, Rodriguez's unpaid wage claims substantially depend on the analysis of the CBA

9    because resolution of the claims will require interpretation of several terms of the CBA as set forth

10   above and determining the meaning of industry terms is a form of interpretation. *See Kobold v. Good*

11   *Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1046 (9th Cir. 2016) ("under longstanding labor law

12   principles . . . the practices of the industry and the shop . . . [are] equally a part of the [CBA] although

13   not expressed in it" (quoting *United Steelworks of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581-

14   82 (1960)). Since this claim substantially depends on analysis of the CBA, it is preempted under

15   Section 301 of the LMRA.

16   **b.   Plaintiff's Rest Period Claim (Fourth Cause of Action)
     Substantially Depends on Analysis of the CBA**

17   

18   Even assuming the CBA does not exempt Plaintiff's rest period claim (it does as analyzed

19   above), resolution of Plaintiff's rest break claims will still require analysis of the CBA given that the

20   CBA specifically provides for how rest periods will be paid. *See Marquez*, 2018 WL 3218102, at *3-

21   4 (C.D. Cal. June 28, 2018) (granting a motion to dismiss on section 301 preemption grounds where

22   evaluating rest period agreements in a CBA "will require more than merely applying the terms of the

23   CBA. It will require interpretation, and the parties will likely dispute the meaning of these terms.").

24   The parties' past practices, deemed part of the CBA, will also factor into this analysis. *Consolidated*

25   *Rail Corp. v. Ry. Labor Execs. Ass'n*, 491 U.S. 299, 307 (1989) ("[C]ollective bargaining agreements

26   may include implied, as well as express, terms. Furthermore, it is well established that the parties'

27   practice, usage and custom is of significance in interpreting their agreement.") (citing *Transportation*

28   *Union v. Union Pacific R. Co.*, 385 U.S. 157, 161 (1966)).

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

16

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Here, the "Rest Periods" provision in the CBA references "each rest period, which insofar as practicable, shall be in middle of the work" and provides that nothing prevents an employer from "staggering rest periods to avoid interruption in the flow of work and to maintain continuous operations, or from scheduling rest periods to coincide with breaks in the flow of work that occur in the course of the workday." (*See* 2020 CBA, Sec. 6, Work Hours per Day, p. 20). Further analysis of the parties' practice and usage with respect to the "Rest Periods" provision will be necessary to resolve the disputed terms. Thus, Plaintiff's rest break claim is substantially dependent on analysis of the CBA, and therefore preempted by Section 301.

### c. Plaintiff's Failure to Pay Business Expenses (Seventh Cause of Action) Substantially Depends on Analysis of the CBA

Rodriguez alleges he was entitled to reimbursements for purchasing mandatory work uniforms, safety equipment, laundering mandatory work uniforms, mileage and/or gas costs, use of cellular phones, and tools. (*See* Compl, ¶16). Akin to his rest period claim, Plaintiff's unreimbursed business expenses claim will also require extensive analysis and interpretation of the written CBA, along with the parties' practice, usage, and custom, given that the CBA specifically provides for reimbursable business expenses. *See generally Curtis v. Irwin Indus., Inc.*, 913 F.3d at 1155. *First*, while the CBA provides and outline mileage and/or gas costs to be reimbursed, specific terms in the CBA will require a more refined analysis and interpretation, and the terms will clearly be disputed. (*See* 2020 CBA, Sec. 9, Expenses Out of Town). For example, the CBA provides that "[m]ileage will be the actual number of miles travelled over the most direct regularly travelled route between the job and the designated point." (*Id.*). Thus, it is inherently necessary to analyze the CBA and the parties' customs and practices to determine the meaning of "actual number of miles" and "most direct regularly travelled route."

*Second*, the CBA provides that "[w]orkmen shall furnish for their own use all necessary hand tools to enable them to effectively install all work" while "[t]ools broken on the job such as drills, taps, hacksaw blades, etc. shall be replaced by the individual employer." (*See* 2020 CBA, Sec. 24. Basic Provisions at B). The CBA also provides that proper "safe housing, casing or tube shall be provided for any and every means, method, appliance or equipment employed to transmit or give signals, directing work or operation of any and various devices in connection with work being done by Iron

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

17

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Workers." (*Id.*, at F). And when using automatic or semiautomatic equipment and/or welding continuously, safety equipment will be provided. (*Id.* at I). Again, interpretation and analysis of the CBA will be critical, as the parties will be expected to dispute the meaning of these terms and provisions.

*Third*, the alleged unreimbursed expenses related to mandatory uniforms and laundering costs will yet again, require extensive interpretation and analysis of the CBA. The CBA provides that employees "exposed to acids, caustics or any similar substances which would cause damage to their clothing, shoes, gloves, or tools, shall be provided protective clothing and equipment" and if such clothing is damaged, they will be replaced by the employer. (*Id.*, at E). The parties will be expected to dispute the meaning of "protective clothing" and will further require analysis the parties' customs and practices to determine whether the laundering is sufficient to replace any damaged clothing within the meaning of these terms.

In sum, resolution of Plaintiff's business expenses claim cannot be determined without the interpretation of the CBA's provisions.

### d. The Waiting Time Penalties and Final Pay (Fifth Cause of Action), Inaccurate Wage Statements (Sixth Cause of Action), and Unlawful Conduct (Ninth Cause of Action) Claims Depend Entirely on the Underlying Unpaid Wages, Meal and Rest Period, and Unpaid Business Expenses and Vacation Claims

Plaintiff's remaining claims for waiting time penalties, failure to pay final wages in violation of Labor Code section 203, failure to provide accurate wage statements, and unlawful conduct in violation of Business and Professions Code §17200 *et seq.*, depend entirely on the outcome of the other causes of action brought forth by Plaintiff.  For the reasons discussed above, these claims require the Court to analyze and interpret the relevant CBA.

In the fifth and sixth causes of action, Plaintiff alleges that Defendant failed to pay Plaintiff and the putative Class Members wages earned or unpaid at the time of separation, and that G&S provided inaccurate wage statements. (*See* Complaint, ¶¶ 59-66, 67-72). The predicate claims will necessarily dictate what wages Plaintiff is entitled to as a threshold matter, in order to *then* determine what Plaintiff was allegedly owed at the time of separation, and whether the wage statements were accurate. *See Curtis*, 913 F.3d at n. 3 (finding inaccurate pay stub and final pay claims as derivative

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

18

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

claims of overtime, meal and rest period, and minimum wage claims). Thus, resolution of these claims depends entirely upon the claims for unpaid overtime and minimum wages, meal and rest period claims, and the unpaid business and vacation expenses claims.

In the ninth cause of action, Plaintiff alleges that Defendants engaged in unlawful conduct in violation of the Unfair Competition Law ("UCL") at Business & Professions Code section 17200. (*See* Complaint ¶ 89). "[A] violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544 (2007). Thus, UCL claims under this prong "stand or fall depending on the fate of the antecedent substantive causes of action." *Krantz v. BT Visual Images, LLC*, 89 Cal. App. 4th 164, 178 (2001).

Accordingly, Section 301 of the LMRA preempts Plaintiff's derivative claims for penalties under Labor Code section 203 and unfair unlawful conduct under the UCL because liability stems from the same underlying issues. *See, e.g., Estrada v. Kaiser Foundation Hospitals*, 678 Fed.Appx. 494, 497 (9th Cir. 2017) (finding that where a cause of action derives from a preempted claim, the derivative cause of action also fails).

**C.    Plaintiff's Complaint Should Be Dismissed Without Leave to Amend Because Plaintiff Failed to Exhaust the CBA's Grievance Procedures**

The CBA sets forth a detailed and comprehensive grievance procedure that parties must follow in the event of a dispute arising out of any member's employment with G&S.  (2020 CBA, Sec. 28 Grievance Procedure).  A failure to exhaust exclusive contractual remedies warrants dismissal of Plaintiff's claims. *See Soremekun v. Thrifty Payless, Inc.* 509 F.3d 978, 988-89 (9th Cir. 2007) (summarily dismissing Plaintiff's claims for failure to exhaust exclusive contractual remedies under the collective bargaining agreement.). Here,  Rodriguez notably omits any allegation[7] he complied with this grievance procedure despite the instant lawsuit which alleges unpaid wages, failure to provide meal or rest periods, failure to provide accurate wage statements, failure to pay business expenses and vacation time, and a violation of the Business & Professions Code §17200. *All* of these alleged wage and hour violations are subject to the Grievance Procedure.  Nowhere in Rodriguez's Complaint does he mention ever submitting any of these issues to the Board of Adjustment. As a result, this Court

---

[7] G&S is also unaware of any grievance or complaint submitted by Mr. Rodriguez.

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA 94597
925.932.2468

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

should dismiss Rodriguez's Complaint, requiring him to first pursue these claims under the CBA's grievance and arbitration provisions.

To bring such a claim, however, a union-represented employee must first attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *See DelCostello v. Int'l Brotherhood Of Teamsters*, 462 U.S. 151, 163 (1983); *Vaca v. Sipes*, 386 U.S. 171, 184 (1967); *Sidhu v. Fletcto Co., Inc.*, 279 F.3d 896, 898 (9th Cir. 2002). "Subject to very limited judicial review, [the employee] will be bound by the result according to the finality provisions of the agreement." *DelCostello*, 462 U.S. at 164; *see also Vaca*, 386 U.S. at 181-83. Further, the employee must bring the action alleging that the employer breached the CBA and alleging that the union breached its duty of fair representation, within six months of the end of the contractual grievance process. *DelCostello*, 462 U.S. at 169-70; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 989, n.39 (9th Cir. 2007).

Here, the CBA provides a detailed grievance and arbitration procedure. Yet, Plaintiff failed to plead any facts (nor can he) showing that he exhausted the contractual remedies provided by the CBA or showing that the union breached its duty of fair representation. Therefore, the Complaint must be dismissed in its entirety without leave to amend.

## V.    CONCLUSION

All of Plaintiff's claims exist solely as a result of the CBA or are substantially dependent on analysis of the applicable CBA between Defendant Gonsalves & Santucci, Inc. and the Union covering Plaintiff's employment. For the reasons discussed above, these claims are completely preempted under Section 301 of the Labor Management Relations Act. Defendant respectfully requests that the Court dismiss the Complaint in its entirety without leave to amend because Plaintiff failed to exhaust the contractual grievance process set forth in the applicable CBA.

/ / /

/ / /

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT

1

Dated:  November 4, 2021                    LITTLER MENDELSON P.C.

2

3                                                    *s/ William J. Kim*
                                                    ─────────────────────────
4                                                    Gregory G. Iskander
                                                    William J. Kim
5
                                                    Attorneys for Defendant
6                                                    GONSALVES & SANTUCCI, INC.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
Treat Towers
1255 Treat Boulevard
Suite 600
Walnut Creek, CA  94597
925.932.2468

21

DEFENDANT GONSALVES & SANTUCCI'S MPA ISO MOTION TO DISMISS PLAINTIFF'S COMPLAINT