UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ELMER N. RODRIGUEZ, an individual and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GONSALVES & SANTUCCI, INC.,<br><br>Defendant. | Case No. 21-cv-07874-LB<br><br>**ORDER DISMISSING CASE AND DENYING MOTION TO REMAND**<br><br>Re: ECF Nos. 13, 16 |

## INTRODUCTION

In this putative class action, the plaintiff — a construction worker — sued his former employer in state court, claiming violations of California wage-and-hours laws governing overtime pay, minimum wage, meal-and-rest breaks, payment of wages on termination, accurate wage statements, reimbursement of expenses, and vacation pay.[1] The defendant-employer removed the case to federal court and then moved to dismiss on the grounds that § 201 of the Labor Management Relations Act (LMRA) preempted the claims because they either (1) involve rights conferred directly by the parties' collective-bargaining agreement (CBA) or (2) substantially depend on analysis and interpretation of the CBA.[2] The plaintiffs moved to remand for lack of

---

[1] Compl. – ECF No. 2-1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Notice of Removal – ECF No. 1; Mot. – ECF No. 13; Reply – ECF No. 28.

ORDER – No. 21-cv-07874-LB

preemption or diversity jurisdiction.[3] The court dismisses the case because the LMRA preempts the claims and denies the motion for remand as moot.

## STATEMENT

### 1. The Collective-Bargaining Agreements

The plaintiff worked for the defendant on construction projects from February 2020 to December 2020 and was a member of a CBA governing ironworkers' employment. The 2017 CBA covered July 1, 2017, to June 30, 2020, and the 2020 CBA covered July 1, 2020, to December 31, 2024.[4]

The CBA provides that the union is the employees' exclusive bargaining representative and sets forth the work covered under the CBA.[5] Covered work includes the minimum hourly and overtime compensation for the plaintiff and the putative class, scheduled wage increases, the hours of work, and meal and rest periods. For example, it defines eight hours as a day's work (occurring between the hours of 5 a.m. and 5 p.m.) and identifies overtime hours that will be paid at either 1.5 times or twice the hourly rate. It reflects the parties' specific agreements regarding meal and rest breaks, including overtime pay when there is no opportunity for a meal break. For example, employees who start before 8 a.m. and work continuously for 4.5 or 5 hours without an opportunity for lunch receive overtime pay at a defined rate until they have an opportunity to take the break and a reasonable opportunity to eat lunch.[6] There are similar specific provisions about

---

[3] Mot. – ECF No. 16.

[4] Compl. – ECF No. 2-1 at 3 (¶ 2). Req. for Judicial Notice – ECF No. 14 (citing authorities that allow the court to take judicial notice of CBAs) & CBAs, Exs. A, B to *id.* – ECF No. 14-1, 14-2. The request for judicial notice is unopposed, and the court takes judicial notice of the CBAs.

[5] 2020 CBA § 7 – ECF No. 14-1 at 12 (p. 1); 2020 CBA § 7 – ECF No. 14-2 at 13 (p. 1), 35 (p. 23). In addition to a citation to the ECF-generated page number at the top of the document, when citing to a CBA the order cites to the page number at the bottom of the document).

[6] 2017 CBA § 6(B-1) – ECF No. 14-1 at 32–33 (pp. 21–22); 2020 CBA § 6(B-1) – ECF No. 14-2 at 30 (p. 18).

ORDER – No. 21-cv-07874-LB    2

rest breaks, including when they are taken, how long they are, where they are taken, and what happens with overtime work.[7]

The CBA defines how pay is distributed and the content of the pay statements. Payday is once a week on a day agreed to by the union and the employer, and wages are paid before quitting time in cash, by check, or by an electronic-fund transfer (among other means). Each payment of wages is accompanied by a wage statement that identifies the employer, the total earnings, the deductions (and their purposes), and net wages.[8]

The CBA addresses expense reimbursements. (This is relevant to the plaintiff's claim that the defendant did not reimburse mandatory work uniforms, safety equipment, laundering the uniforms, mileage and gas costs, use of cell phones, and tools.[9]) It defines business expenses that are reimbursable such as mileage pay, travel reimbursements, and company transportation.[10] It defines the expenses borne by employees: employees must "furnish for their own use all necessary hand tools to enable them to effectively install all work," and the employer will replace "tools broken on the job such as drills, taps, hacksaw blades, etc."[11] The employer provides "safe housing, casing or tube . . . for any and every means, method, appliance, or equipment employed to transmit or give signals, directing work or operation of any and various devices in connection with work done by Iron Workers."[12] The employer also provides safety equipment for the use of automatic or semiautomatic equipment or welding.[13]

---

[7] 2017 CBA § 6(B-2) – ECF No. 14-1 at 33–34 (pp. 22–23); 2020 CBA§ 6(B-2) – ECF No. 14-2 at 30–31 (pp. 18–23).

[8] 2017 CBA § 8 – ECF No. 14-1 at 44–45 (pp. 33–34); 2020 CBA § 8 – ECF No. 14-2 at 44–45 (pp. 32–33).

[9] Compl. – ECF No. 2-1 at 6–7 (¶ 16).

[10] 2017 CBA § 9 – ECF No. 14-1 at 45–50 (pp. 34–39); 2020 CBA § 9 – ECF No. 14-2 at 45–48 (pp. 33–36).

[11] 2017 CBA § 24(B) – ECF No. 14-1 at 66 (p. 55); 2020 CBA § 24(B) – ECF No. 14-2 at 65 (p. 53).

[12] *Id.* at F. 2017 CBA § 24(F) – ECF No. 14-1 at 73 (p. 62); 2020 CBA § 24(F) – ECF No. 14-2 at 66 (p. 54).

[13] 2017 CBA § 25(I) – ECF No. 14-1 at 73 (p. 62); 2020 CBA § 25(I) – ECF No. 14-2 at 72 (p. 60).

The CBA addresses vacation pay, which is provided under the California Field Iron Workers Vacation/Personal Time Off Plan. Employers make a contribution for each hour paid and/or worked, and the plan's trustees administer the plans, including vacation time.[14] The CBA prohibits employers from providing vacation benefits directly.[15]

The CBA also provides grievance procedures for disputes. There is a board for settlement of disputes comprised of two union representatives and two employer representatives, and the CBA has a process (including the appointment of a fifth independent member if the board members cannot agree) for resolving disputes arising out of the "meaning and enforcement" of the CBA.[16]

## 2. Relevant Procedural History

The class-action complaint has the following claims: (1) failure to pay overtime pay (claim one); (2) failure to pay minimum wages (claim two); (3) failure to provide meal and rest breaks (claims three and four); (4) failure to pay all wages on termination (claim five); (5) failure to provide accurate wage statements (claim six); (6) failure to reimburse employees for necessary expenditures in violation of Cal. Labor Code § 2802 (claim seven); (7) failure to pay vested vacation pay in violation of Cal. Labor Code § 227.3 (claim eight); and (8) a violation of California's Unfair Competition Law (UCL), Cal. Labor Code § 17200, predicated on the underlying Labor Code violations (claim nine).[17] The complaint does not mention the CBA or whether the plaintiff invoked the dispute-resolution process.

The defendant removed the case to federal court and then moved to dismiss it as preempted by the LMRA.[18] The plaintiff moved to remand the case to state court for lack of federal

---

[14] 2017 CBA § 11 – ECF No. 14-1 at 53–54 (pp. 42–43); 2020 CBA § 11 – ECF No. 14-2 at 52 (p. 40).

[15] Req. for Judicial Notice, Ex. C – ECF No. 14-3 at 4–5.

[16] 2017 CBA § 28 – ECF No. 14-1 at 77–78 (pp. 66–67); 2020 CBA § 28 – ECF No. 14-2 at 75–76 (pp. 63–64).

[17] Compl. – ECF No. 2-1 at 10–20 (¶¶ 30–92).

[18] Notice of Removal – ECF No. 1; Mot. to Dismiss – ECF No. 13.

ORDER – No. 21-cv-07874-LB            4

1   jurisdiction.[19] The court held a hearing on December 23, 2021. All parties consented to magistrate-
2   judge jurisdiction under 28 U.S.C. § 636.[20]

## ANALYSIS

LMRA § 301 establishes federal jurisdiction for "[s]uits for violations of contracts between an employer and a labor organization." 28 U.S.C. § 185(a). It completely preempts any state claims based on alleged violations of collective-bargaining agreements between employers and labor organizations. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983). The test for preemption is whether resolution of the state claim requires the court to construe a provision of the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988); *Dent v. Nat'l Football League*, 902 F.3d 1109, 1116–17 (9th Cir. 2018). If a claim is "founded directly on rights created by collective-bargaining agreements" or is "substantially dependent on analysis of a collective-bargaining agreement," then § 301 preempts it. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (cleaned up). But "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc); *see Dent*, 902 F.3d at 1116 ("The plaintiff's claim is the touchstone of the § 301 analysis.") (cleaned up).

The preemption inquiry thus has two parts. First, a court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). Second, if the right underlying the state

---

[19] Mot. for Order Remanding Action to State Court – ECF No. 16.
[20] Consents – ECF Nos. 10, 12.

ORDER – No. 21-cv-07874-LB       5

1  claim exists independently of the CBA, then the court considers whether the right is "substantially

2  dependent on analysis of a collective bargaining agreement." *Id.* (cleaned up).

3  The complaint has the following claims: (1) failure to pay overtime pay (claim one); (2) failure

4  to pay minimum wages (claim two); (3) failure to provide meal and rest breaks (claims three and

5  four); (4) failure to pay all wages on termination (claim five); (5) failure to provide accurate wage

6  statements (claim six); (6) failure to reimburse employees for necessary expenditures in violation

7  of Cal. Labor Code § 2802 (claim seven); (7) failure to pay vested vacation pay in violation of Cal.

8  Labor Code § 227.3 (claim eight); and (8) a violation of California's UCL based on the Labor

9  Code violations. All are preempted.

10  First, the plaintiff alleges a failure to pay overtime wages (claim one) in violation of Cal. Labor

11  Code § 510. But § 510 does not apply to an employee covered by a valid CBA "if the agreement

12  expressly provides for the wages, hours of work, and working conditions of the employees, and if

13  the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate

14  of pay for those employees of not less than 30 percent more than the state minimum wage." Cal.

15  Lab. Code § 514. The CBA here provides for wages, hours of work, and working conditions. It

16  provides for meal periods. Its grievance procedures apply to any disputes arising out of the CBA. It

17  provides for premium wages for overtime. And it provides a base rate of pay of more than 30

18  percent of the applicable California minimum wage.[21] In short, it satisfies § 514. *Id.*

19  In *Curtis*, the plaintiff contended that he had a nonnegotiable statutory right to overtime pay for

20  his time on an offshore drilling platform. *Id.* at 1153. The Ninth Circuit disagreed: it held that when

21  a CBA satisfies the statutory exemption to overtime, the CBA creates the right to overtime pay (and

22  the independent statutory right no longer exists). *Id.* at 1154–55. It rejected the plaintiff's argument

23  that the CBA had to provide overtime pay equivalent to that in Cal. Labor Code § 510 because this

24  would make the statutory exemption for qualified CBAs superfluous. *Id.* at 1155. Thus, if a CBA

25  satisfies § 514's statutory exemption, § 510's overtime requirements do not apply, and the CBA

---

[21] Mot. to Dismiss – ECF No. 13 at 14 fn. 4; 2017 CBA, Schedule of Hourly Wages – ECF No. 14-1 at 87–107 (pp. 76–87); 2020 CBA, Schedule of Hourly Wages – ECF No. 14-2 at 84–106 (pp. 72–78).

United States District Court
Northern District of California

1   conveys the only right to overtime. *Id.* at 1154–55; *accord Parker v. Cherne Contracting Corp.*, No.
2   18-cv-01912-HSG, 2019 WL 359989, at *5 (N.D. Cal. Jan. 29, 2019).

3       Citing *Olea v. Teichert Pipelines, Inc.*, and *Cathcart v. Sara Lee Corp.*, the plaintiff contends that
4   the CBA does not meet the statutory exemption because it does not contain all provisions of § 514.[22]
5   *Olea*, No. 2:21-cv-01675-RGK, 2021 WL 1839683 (C.D. Cal. May 7, 2021); *Cathcart*, No. C-09-
6   5748-MMC, 2011 WL 5981849 (N.D. Cal. Nov. 30, 2021). Those cases support the conclusion that
7   preemption applies. In *Olea*, a § 514 exemption applied when the CBAs provided a wage scale,
8   working conditions about meal and rest breaks, jobsite issues, overtime rates, and a rate of pay in
9   excess of the state's minimum wage. 2021 WL 1839683, at *4. In *Cathcart*, the CBAs provided a
10  weekly base pay, payment of commissions, working hours, working conditions related to seniority
11  rules, and holidays and vacation. 2011 WL 598149, at *3. Similar provisions exist in the CBAs here.

12      Second, similarly, the plaintiff's right to meal breaks (claim three) is conferred by the CBA
13  because the CBA satisfies the statutory exemption to meal periods under Cal. Labor Code §
14  512(e). Under the California Labor Code, the requirements for meal periods are set forth in Cal.
15  Labor Code § 512(a) and (b). Those requirements do not apply to an employee covered under a
16  valid CBA that satisfies § 512(e)'s requirement that the valid CBA

> expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rate for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

20  Cal. Lab. Code § 512(e).

21      The CBA satisfies the statutory exemption in § 512(e) because it provides for wages, hours of
22  work, and working conditions, and it provides a right to meal periods. *Parker*, 2019 WL 359989,
23  at *5; *Coria v. Recology, Inc.*, 63 F. Supp. 3d 1093, 1098–1100 (N.D. Cal. 2014). The plaintiff's
24  assertion that he has an independent state right to meal periods is wrong. *Curtis*, 913 F.3d at 1155–
25  56; *Coria*, 63 F. Supp. 3d at 1098 ("So if Section 512(e) applies, then 512(a) does *not* apply, and
26  plaintiff's claimed right to meal periods cannot be said to be based on state law.") (cleaned up).

---

[22] Opp'n – ECF No. 23 at 20.

ORDER – No. 21-cv-07874-LB        7

Third, the right to rest periods (claim four) is conferred by the CBA too because it satisfies the exemption to rest periods under Industrial Welfare Commission Order 16-2001 (IWC Wage Order 16). Cal. Code Regs. tit. 8, § 11160 (2002). The wage order governs rest breaks for employers (like the defendant) in the construction industry. *Id.* § 11. The rest periods do not apply "to any employee covered by a valid collective bargaining agreement if the [collective bargaining] agreement provides equivalent protection." *Id.* § 11(E); *see Zayerz v. Kiewit Infrastructure W.*, No. 16-CV-6405-PSG, 2018 WL 582318, at *4 (C.D. Cal. Jan. 18, 2018). The wage provisions in the CBA are nearly identical to those in the wage order.[23] Thus, the plaintiff's right to rest periods is conveyed solely by the CBA. Even if the CBA does not exempt the claim, resolution of the claim still requires an analysis of the CBA given that it defines how rest periods will be paid. *Marquez v. Toll Glob. Forwarding (USA) Inc.*, No. 2:18-cv-03054-ODW (ASx), 2018 WL 3218102, at *3–4 (C.D. Cal. June 28, 2018) (evaluating rest period requires more than applying the terms of the CBA and requires interpretation of terms that the parties likely will dispute).

Fourth, the LMRA preempts the claim for failure to timely pay final wages under Cal. Labor Code §§ 201 through 203 (claim five) because the CBA has different pay arrangements. *Gillette v. Stater Bros. Mkts., Inc.*, No. 19-cv-1292-JVS, 2019 WL 8017735, at *6 (C.D. Cal. Sept. 23, 2019). When a CBA has alternate pay arrangements to those in the Labor Code, wage payments arise under the CBA and not state law. *Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1201–02 (C.D. Cal. 2015). The CBA here provided that the regular payday was once a week "on the day agreed upon between" the employer and the union. For laid-off or terminated employees, they are "laid off or discharged at the site of construction and paid in full" immediately, by check or other defined means, and if required to go elsewhere (such as to the employer's office), they are paid for the time to get there.[24] Also, the CBA provides for penalties if workers are not paid during usual working hours, including overtime pay for extra time spent on the job site or for delay.[25]

---

[23] *Compare* 2020 CBA § 6(B-2) – ECF No. 14-2 at 30–31 (pp. 18–23) *with* IWC Order No. 16 § 11.
[24] 2017 CBA § 8 – ECF No. 14-1 at 44 (p. 33); 2020 CBA § 8 – ECF No. 14-2 at 44 (p. 32).
[25] 2020 CBA § 8 – ECF No. 14-2 at 44–45 (pp. 32–33).

These are alternate pay arrangements that apply to the regular payment of wages and payment of final wages and include penalties for failure to comply with the CBA's terms. This right to payment thus arises under the CBA and not state law. *Gillette*, 2019 WL 8017735, at *6; *Hall*, 146 F. Supp. 3d at 1201–02.

Fifth, the CBA also provides the plaintiff's right to receive vested vacation time (claim eight) at the time of termination under Cal. Labor Code § 227.3. Under § 227.3, "[u]nless otherwise provided by a collective-bargaining agreement," vested vacation time is paid as wages upon an employee's termination of employment. Cal. Lab. Code § 227.3. The CBA here references the applicable vacation plan, which provides for vacation benefits administered by a board of trustees, requires employer contributions at a defined hourly rate to the plan, and prohibits employers from paying vacation benefits directly.[26] Because the CBA is an alternate contract for vacation pay, § 227.3 does not apply, and the LMRA preempts the claims. *Gillette*, 2019 WL 8017735, at * 7; *Burnside*, 391 F.3d at 1059–60.

Sixth, the claims for unpaid wages, whether overtime, straight time, or minimum wage (claims one, two, and five) substantially depend on an analysis of the CBA. The agreement details the hours of work, hourly rates, workdays, and shift work.[27] The plaintiff claims that the defendant failed to pay minimum wages for off-the-clock activity, such as making phone calls or driving.[28] The CBA addresses compensation for activities such as show-up expenses or actual hours worked.[29] At minimum, resolution of the claims requires interpretation of CBA terms such as "actual hours worked" and "show up expenses." Thus, the unpaid wages claim turns on the analysis of the CBA and interpretation of its terms. "Determining the meaning of industry terms is a form of interpretation." *Marquez v. Toll Global Forwarding*, 804 F. App'x 679, 681 (9th Cir. 2020) (affirming dismissal of a rest-period claim under the second prong of *Burnside* because the

---

[26] 2017 CBA § 11 – ECF No. 14-1 at 53–54 (pp. 42– 43); 2020 CBA § 11 – ECF No. 14-2 at 52 (p. 40).

[27] 2017 CBA §§ 6–8 – ECF No. 14-1 at 31–45 (pp. 20–34); 2020 CBA §§ 6–8 – ECF No. 14-2 at 16–21 (pp. 28–33).

[28] Compl. – ECF No. 2-1 at 5–6, 10–11, 12 (¶¶ 10, 11, 34, 40).

[29] 2017 CBA § 6 – ECF no. 14-1 at 31–39 (pp. 20–28); 2020 CBA § 6 – ECF No. 14-2 at 31 (p. 19).

United States District Court
Northern District of California

claim required the court to interpret industry terms such as "permit," "load," "unattended," and "leave a load."); *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1035 (9th Cir. 2015) (claims that would require defining terms of the CBA were preempted). The LMRA thus preempts these claims that are substantially dependent on analysis of the CBA.

Seventh, the failure to pay business expenses (claim seven) substantially depends on an analysis of the CBA. The plaintiff claims an entitlement for reimbursement for purchasing mandatory work uniforms, safety equipment, laundering the uniforms, mileage and gas costs, use of cell phones, and tools.[30] The CBA provides for reimbursable expenses for mileage and gas, and the terms about mileage and routes require analysis and interpretation.[31] Similarly, as described in the Statement, it provides for workers to furnish some equipment and the employer to provide housing for certain equipment and safety equipment.[32] It describes employees' entitlement to protective clothing and equipment if they work with caustic substances.[33] Resolution of the claim turns on the analysis of the CBA and interpretation of its terms, and the LMRA thus preempts these claims that are substantially dependent on analysis of the CBA.

Eighth, the derivative claims for waiting time penalties, failure to pay final wages in violation of Cal. Labor Code § 203, failure to provide accurate statements, and the UCL claim (claims five, six, and nine) depend on the outcome of the other claims. Those underlying claims require analysis and interpretation of the CBA. For example, the predicate claims determine the wages that the plaintiffs are entitled to at the time of separation and the resulting accuracy of the wage statements (claims five and six). *Curtis*, 913 F.3d at 1150 n.3. The UCL claim similarly stands or falls on the predicate claims. *Berryman v. Merit Prop. Mgmt.*, 152 Cal. App. 4th 1544, 1554 (2007) ("A violation of another law is a predicate for stating a cause of action under the UCL's unlawful prong.") (cleaned up). The LMRA preempts these derivative claims that are substantially dependent on analysis of the

---

[30] Compl. – ECF No. 23 at 6–7 (¶ 16).

[31] 2017 CBA § 9 – ECF no. 14-1 at 45–50 (pp. 34–39); 2020 CBA § 9 – ECF No. 14-2 at 45–48 (pp. 33–36).

[32] 2017 CBA § 25 – ECF No. 14-1 at 72 (p. 61); 2020 CBA § 25(F) – ECF No. 14-2 at 71 (p. 59).

[33] 2017 CBA § 24 – ECF No. 14-1 at 67 (p. 56); 2020 CBA § 24(E) – ECF No. 14-2 at 65 (pp. 53–54).

CBA. *Jimenez v. Young's Mkt. Co., LLC*, No. 21-cv-02410-EMC, 2021 WL 5999082, at *13 (claims that are derivative of claims that are preempted are themselves preempted).

Finally, the plaintiff pleaded no facts that he exhausted the CBA's grievance process.

## CONCLUSION

The court dismisses the claims because the LMRA preempts them. The plaintiff asked for leave to amend, and the court gives leave to amend by February 8, 2022. The court denies the motion to remand as moot.

**IT IS SO ORDERED.**

Dated: January 18, 2022.

LAUREL BEELER
United States Magistrate Judge