1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ELMER N. RODRIGUEZ,<br><br>Plaintiff,<br><br>v.<br><br>GONSALVES & SANTUCCI, INC.,<br><br>Defendant. | Case No. 21-cv-07874-LB<br><br>**ORDER GRANTING MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Re: ECF No. 34 |

## INTRODUCTION

In this putative class action, the plaintiff — a construction worker — sued his former employer in state court, claiming that employees routinely worked overtime hours, generally because they were not compensated for tasks that they had to complete before clocking in at the beginning of the day and after clocking off at the end of the day. This meant that the plaintiffs were not paid minimum wage and did not receive accurate wage statements. The court previously dismissed an earlier complaint on the ground that § 201 of the Labor Management Relations Act preempted the claims because they either (1) involve rights conferred directly by the parties' collective-bargaining agreement (CBA) or (2) substantially depend on analysis and interpretation of the CBA. The LMRA also preempts the claims in the amended complaint.

**STATEMENT**

### 1. Fact Allegations About Job Duties and Claims

The earlier complaint and the new complaint describe the putative class members' job duties that allegedly resulted in uncompensated hours, thereby driving down the overall wages below the minimum wage and resulting in overtime hours.

#### 1.1 Initial Complaint

In the initial complaint, the plaintiff alleged that class members worked overtime hours because the defendant made them work off the clock "by, among other things, failing to accurately track and/or pay for all minutes actually worked; engaging, suffering, or permitting employees to work off the clock, including, without limitation, by requiring employees: to make phone calls or drive off the clock; detrimental rounding of employee time entries, and editing and/or manipulation of time entries to show less minutes than actually worked. . . ."[1] They also claimed an inability to take their meal and rest breaks.[2] As a result, the defendant did not pay employees the full wages due them on termination (including overtime and minimum wages and vacation pay). This meant that their wage statements were inaccurate.[3] The employer did not reimburse costs that employees incurred in (1) buying mandatory work uniforms, safety equipment, and tools, (2) laundering mandatory uniforms, and (3) using personal cell phones for work.[4] The defendant also had a policy of not paying employees with compensation at their final rate of pay for unused vested vacation pay.[5]

The complaint had the following claims: (1) failure to pay overtime pay (claim one); (2) failure to pay minimum wages (claim two); (3) failure to provide meal and rest breaks (claims three and four); (4) failure to pay all wages on termination (claim five); (5) failure to provide

---

[1] Compl. – ECF No. 2 at 4 (¶¶ 10–11). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents, except that when the order cites the CBAs, it also cites the page numbers at the bottom of the CBAs.

[2] *Id.* at 5 (¶¶ 12–13).

[3] *Id.* (¶¶ 14–15).

[4] *Id.* at 5–6 (¶ 16).

[5] *Id.* at 6 (¶ 17).

accurate wage statements (claim six); (6) failure to reimburse employees for necessary expenditures in violation of Cal. Labor Code § 2802 (claim seven); (7) failure to pay vested vacation pay in violation of Cal. Labor Code § 227.3 (claim eight); and (8) a violation of California's Unfair Competition Law (UCL), Cal. Labor Code § 17200, predicated on the underlying Labor Code violations (claim nine).[6] The complaint did not mention the CBA or whether the plaintiff invoked the dispute-resolution process.

### 1.2 Amended Complaint

In the amended complaint, the plaintiff alleged that class members worked overtime hours because the defendant made them work off the clock "by, among other things, failing to accurately track and/or pay for all minutes actually worked; engaging, suffering, or permitting [class members] to work off the clock, including, without limitation, by requiring . . . Class Members: to come early to work and leave late [from] work without being able to clock in for all that time, to complete pre-shift tasks before clocking in and post-shift tasks after clocking out, to don and doff uniforms and safety equipment off the clock, and/or go through temperature checks off the clock; detrimental rounding of . . . time entries; and editing and/or manipulation of time entries to show less hours than actually worked." The off-the-clock tasks consisted of the following: "waiting in line, outside of the worksite, to have their temperatures checked, for a period within the Covid-19 pandemic, including but not limited to, in the month of April 2020," for periods up to 45 minutes because there was only one thermometer. After their shift, class members worked off the clock for about fifteen minutes to collect and store their tools (cables, torches, drills, and electrical saws). The class members also had to don and doff their uniforms off the clock, a task that took between fifteen and twenty minutes. This resulted in "occasional pay periods where employees were not paid for all time worked. . . ."[7] As a result, the defendant did not pay class members the full wages due them on termination. This meant that their wage statements were inaccurate.[8]

---

[6] *Id.* at 10–20 (¶¶ 30–92).

[7] FAC – ECF No. 32 at 4–5 (¶ 10).

[8] *Id.* at 5 –6 (¶¶ 11–12).

United States District Court
Northern District of California

1    The FAC has the following claims: (1) failure to pay minimum wages in violation of Cal. Labor

2    Code § 1197; (2) failure to provide accurate wage statements in violation of Cal. Labor Code §

3    226(a); (3) failure to pay all wages on termination in violation of Cal. Labor Code § 201–02; and (4)

4    unfair competition in violation of the UCL.[9] The complaint did not mention the CBA or whether the

5    plaintiff invoked the dispute-resolution process.

6

7    **2.    The CBA**

8    The plaintiff worked for the defendant on construction projects from February 2020 to

9    December 2020 and was a member of a CBA governing ironworkers' employment. The 2017

10    CBA covered July 1, 2017, to June 30, 2020, and the 2020 CBA covered July 1, 2020, to

11    December 31, 2024.[10]

12    The relevant sections of the CBA (also recited in the earlier order[11]) are as follows.

13    The CBA provides that the union is the employees' exclusive bargaining representative and

14    sets forth the work covered under the CBA.[12] Covered work includes the minimum hourly and

15    overtime compensation for the plaintiff and the putative class, scheduled wage increases, the hours

16    of work, and meal and rest periods. For example, it defines eight hours as a day's work (occurring

17    between the hours of 5 a.m. and 5 p.m.) and identifies overtime hours that will be paid at either 1.5

18    times or twice the hourly rate.[13]

19    The CBA defines how pay is distributed and the content of the pay statements. Payday is once

20    a week on a day agreed to by the union and the employer, and wages are paid before quitting time

21    in cash, by check, or by an electronic-fund transfer (among other means). Each payment of wages

22

23
_____

24    [9] *Id.* at 9– 14 (¶¶ 26–52).

25    [10] *Id.* at 2 (¶ 2). Req. for Judicial Notice – ECF No. 14 (citing authorities that allow the court to take judicial notice of CBAs) & CBAs, Exs. A, B to *id.* – ECF No. 14-1, 14-2. The court previously took judicial notice of the CBAs. Order – ECF No. 31 at 2 n.4 (request was unopposed).

26    [11] Order – ECF No. 31 at 2–4.

27    [12] 2020 CBA § 7 – ECF No. 14-1 at 12 (p. 1); 2020 CBA § 7 – ECF No. 14-2 at 13 (p. 1), 35 (p. 23). s

28    [13] 2017 CBA § 6(B-2) – ECF No. 14-1 at 33–34 (pp. 22–23); 2020 CBA§ 6(B-2) – ECF No. 14-2 at 30–31 (pp. 18–23).

United States District Court
Northern District of California

1    is accompanied by a wage statement that identifies the employer, the total earnings, the deductions

2    (and their purposes), and net wages.[14]

3        The CBA also provides grievance procedures for disputes. There is a board for settlement of

4    disputes comprised of two union representatives and two employer representatives, and the CBA

5    has a process (including the appointment of a fifth independent member if the board members

6    cannot agree) for resolving disputes arising out of the "meaning and enforcement" of the CBA.[15]

7

8    **3.  Relevant Procedural History**

9        The court held a hearing on the motion to dismiss on March 31, 2022. All parties consented to

10   magistrate-judge jurisdiction under 28 U.S.C. § 636.[16]

11

12                                   **ANALYSIS**

13       LMRA § 301 establishes federal jurisdiction for "[s]uits for violations of contracts between an

14   employer and a labor organization." 28 U.S.C. § 185(a). It completely preempts any state claims

15   based on alleged violations of collective-bargaining agreements between employers and labor

16   organizations. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983). The test

17   for preemption is whether resolution of the state claim requires the court to construe a provision of

18   the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988); *Dent v. Nat'l*

19   *Football League*, 902 F.3d 1109, 1116–17 (9th Cir. 2018). If a claim is "founded directly on rights

20   created by collective-bargaining agreements" or is "substantially dependent on analysis of a

21   collective-bargaining agreement," then § 301 preempts it. *Caterpillar, Inc. v. Williams*, 482 U.S.

22   386, 394 (1987) (cleaned up). But "the bare fact that a collective-bargaining agreement will be

23   consulted in the course of state-law litigation plainly does not require the claim to be

24

25   ───────────────────

26   [14] 2017 CBA § 8 – ECF No. 14-1 at 44–45 (pp. 33–34); 2020 CBA § 8 – ECF No. 14-2 at 44–45 (pp. 32–33).

27   [15] 2017 CBA § 28 – ECF No. 14-1 at 77–78 (pp. 66–67); 2020 CBA § 28 – ECF No. 14-2 at 75–76 (pp. 63–64).

28   [16] Consents – ECF Nos. 10, 12.

1   extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "The plaintiff's claim is the

2   touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the

3   plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated

4   simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol.*

5   *Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc); *see Dent*, 902 F.3d at 1116 ("The

6   plaintiff's claim is the touchstone of the § 301 analysis.") (cleaned up).

7       The preemption inquiry thus has two parts. First, a court must determine "whether the asserted

8   cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.

9   If the right exists solely as a result of the CBA, then the claim is preempted." *Burnside v. Kiewit*

10  *Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). Second, if the right underlying the state

11  claim exists independently of the CBA, then the court considers whether the right is "substantially

12  dependent on analysis of a collective bargaining agreement." *Id.* (cleaned up).

13      The FAC has the following claims: (1) failure to pay minimum wages in violation of Cal.

14  Labor Code § 1197 (claim one); (2) failure to provide accurate wage statements in violation of

15  Cal. Labor Code § 226(a) (claim two); (3) failure to pay all wages on termination in violation of

16  Cal. Labor Code § 201–02 (claim three); and (4) unfair competition in violation of the UCL (claim

17  four).[17]

18      The plaintiff claims that the defendant failed to pay minimum wages for pre-and-post shift off-

19  the-clock activity (such as changing into uniforms, undergoing pre-shift COVID-19 screening, and

20  post-shift equipment storage).[18] He contends that the claims — all predicated on pre-shift and

21  post-shift off-the-clock tasks — do not require an interpretation of the CBA's terms and thus are

22  not preempted.[19] He said that he does not rely for relief on the CBA and instead "seeks to recover

23  for time spent completing activities which are compensable under state law, but for which he

24  received no compensation by Defendant."[20] He also points out that unlike overtime claims, where

25  _____

26  [17] FAC – ECF No. 32 at 9– 14 (¶¶ 26–52).

    [18] *Id.* at 4–5 (¶ 10).

27  [19] Opp'n – ECF No. 37 at 14–18.

28  [20] *Id.* at 14.

United States District Court
Northern District of California

1    there is a Labor Code CBA-based exemption for overtime pay, there is no similar exemption for

2    minimum-wage pay.[21] The defendant contends that the CBA details the hours of work, actual

3    hours worked, hourly rates, workdays, shift work, and show-up expenses, and that resolution of

4    the claims requires interpretation of these terms.[22]

5         The main claim is the unpaid minimum-wage claim. In sum, the allegations are that the off-

6    the-clock work meant that sometimes employees were not paid for all time worked. That in turn

7    meant that the defendant did not pay class members the full wages due them on termination and

8    that their wage statements were inaccurate.[23] If the predicate minimum-wage claim is preempted,

9    the other claims fail too. All claims are preempted.

10        The CBA is detailed and spells out all aspects of the parties' work relationship, including the

11   terms that the defendant identified.[24] The unpaid minimum-wage claim turns on these terms.

12   "Determining the meaning of industry terms is a form of interpretation." *Marquez v. Toll Global

13   Forwarding*, 804 F. App'x 679, 681 (9th Cir. 2020) (affirming dismissal of a rest-period claim

14   under the second prong of *Burnside* because the claim required the court to interpret industry

15   terms such as "permit," "load," "unattended," and "leave a load."); *Kobold v. Good Samaritan

16   Reg'l Med. Ctr.*, 832 F.3d 1024, 1035 (9th Cir. 2015) (claims that would require defining terms of

17   the CBA were preempted). As the court held previously, because the claim for unpaid minimum

18   wages substantially depends on an analysis of the CBA, the LMRA preempts the claim.[25]

19        The plaintiff cites several cases to support his position that interpretation of the CBA

20   nonetheless is not required for the off-the-clock claim here. They do not change the outcome.

21

22   ───────────────

23   [21] *Id.* at 15. In the earlier complaint, the plaintiff alleged a failure to pay overtime pay in violation of
     Cal. Labor Code § 510. The court dismissed the claim because § 510 does not apply to an employee
24   covered by a valid CBA that covers overtime wages when the wage rates meet certain minimums. Cal.
     Labor Code § 514. Order – ECF No. 31 at 6–8.

25   [22] Reply – ECF No. 38 at 4–5; 2017 CBA §§ 6–8 – ECF No. 14-1 at 31–45 (pp. 20–34); 2020 CBA §§
     6–8 – ECF No. 14-2 at 16–21 (pp. 28–33).

26   [23] FAC – ECF No. 32 at 4–6 (¶¶ 10–12).

27   [24] 2017 CBA §§ 6–8 – ECF No. 14-1 at 31–45 (pp. 20–34); 2020 CBA §§ 6–8 – ECF No. 14-2 at 16–
     21 (pp. 28–33).

28   [25] Order – ECF No. 31 at 9–10.

United States District Court
Northern District of California

1    First, he cites *Parker v. Cherne Contracting Corp.* for the contention that "preemption is not

2    appropriate when, as here, a plaintiff 'assert[s] various wage and hours claims based on a failure to

3    compensate at all for certain hours allegedly worked.'" No. 18-cv-01912-HSG, 2019 WL 359989,

4    at *6 (N.D. Cal. Jan. 29, 2019).[26] The uncompensated time in *Parker* involved waiting for or

5    traveling on company shuttles to and from worksites. *Id.* at *1. The court observed that courts

6    "have routinely held that California wage and hours claims are not preempted" when they are

7    based on a failure to compensate at all for certain hours allegedly worked). *Id.* (citing *Mauia v.*

8    *Petrochem Insulation, Inc.*, No. 18-CV-01815-MEJ, 2018 WL 3241049, at *9 (N.D. Cal. July 3,

9    2018) (collecting cases)). The *Parker* CBA defined the "amount of the minimum wage," a term

10   that the *Parker* defendant said necessarily implicated the CBA. The court held that it did not: "the

11   [d]efendant has not identified any substantive dispute over the language of the CBA that would

12   require interpretation, and the Court therefore finds that the minimum wage claims . . . are not

13   preempted by the LMRA." *Id.* The defendant here distinguishes *Parker* persuasively: it involved

14   only the application of the minimum-wage rate in the CBA.[27] By contrast, this case involves the

15   interpretation of other terms.

16   Second, the plaintiff cites *Andrade v. Rehrig Pac. Co.*, No. 20-cv-1448 FMO (RAOx), 2020

17   WL 1934954, at * 3 (C.D. Cal. April 22, 2020), for the contention that the LMRA does not

18   preempt the claim, even where a CBA defines the wages or hours of work.[28] The court there held

19   that "irrespective of how 'the wages' or 'hours of work' are determined under a CBA, plaintiff is

20   entitled to be paid a minimum wage and overtime for all hours he was under the 'control' of

21   defendant." *Id.* (collecting cases). But the case involved overtime pay and the interplay of whether

22   the CBA met the threshold requirements of the California Labor Code. *Id.* By contrast, in this

23   case, after the court dismissed the overtime claim in the earlier complaint, the plaintiff abandoned

24   it.[29]

25   _____

26   [26] Opp'n – ECF No. 37 at 16 (emphasis omitted) (citing *Parker*, 2019 WL 359989, at *6).

     [27] Reply – ECF No. 38 at 4 n.1.

27   [28] Opp'n – ECF No. 37 at 16.

28   [29] Order – ECF No. 31 at 6–8 (applying Cal. Labor Code § 514).

United States District Court
Northern District of California

1    Third, the plaintiff cites *McGhee v. Tesoro Refining & Mktg. Co. LLC* for the premise that there

2  is no LMRA preemption here because the terms in the CBA are not complicated. 440 F. Supp. 3d

3  1062, 1068 (N.D. Cal. 2020).[30] The employer in *McGee* allegedly did not pay employees for

4  periods when they were on call. *Id.* at 1065–66. The court held that the defendants failed to show

5  anything more than a "hypothetical connection between the claims and the terms of the CBA" and

6  "fail[ed] to demonstrate that any CBA provision [was] actively disputed." *McGhee*, 440 F. Supp. 3d

7  at 1069–70 (quoting *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 689, 691 (9th Cir. 2001)). By

8  contrast, here the defendants have identified terms in the CBA that require interpretation.[31]

9    The derivative claims rely on the dismissed claim and claims that have not been submitted

10  under the grievance procedure in the CBA.[32] The court dismisses them too. *Jimenez v. Young's*

11  *Mkt. Co., LLC*, No. 21-cv-02410-EMC, 2021 WL 5999082, at *13 (N.D. Cal. Dec. 12, 2021)

12  (derivative claims preempted).

### CONCLUSION

13  The court dismisses the FAC with prejudice because the LMRA preempts all claims. This

14  resolves ECF No. 34.

15  **IT IS SO ORDERED.**

16  Dated: April 5, 2022

17  _____
    LAUREL BEELER
18   United States Magistrate Judge

---

[30] Opp'n – ECF No. 37 at 17.

[31] Mot. to Dismiss – ECF No. 34 at 10; Reply – ECF No. 38 at 4.

[32] Order – ECF No. 31 at 10–11; Reply – ECF No. 38 at 4–6 (making this argument and collecting cases that a union-represented employee must exhaust any grievance or arbitration remedy provided by a CBA before filing a claim to vindicate rights provided under the CBA).

United States District Court
Northern District of California