1

2

3

4

5

6

7

8                            UNITED STATES DISTRICT COURT

9                         NORTHERN DISTRICT OF CALIFORNIA

10                                San Francisco Division

11    ELMER N. RODRIGUEZ,                      Case No. 21-cv-07874-LB

12                  Plaintiff,
                                               **ORDER DENYING MOTION TO**
13          v.                                 **DISMISS SECOND AMENDED**
                                               **COMPLAINT AND REMANDING**
14    GONSALVES & SANTUCCI, INC.,              **CASE**

15                  Defendant.                 Re: ECF No. 59

16

17                                  **INTRODUCTION**

18          In this putative class action, the plaintiff — a construction worker — sued his former employer

19    in state court, claiming that employees routinely were not compensated for tasks that they had to

20    complete before clocking in at the beginning of the day and after clocking out at the end of the day.

21    This meant that the plaintiffs were not paid the minimum wage, did not receive accurate wage

22    statements, and were not paid all wages due on termination.[1] The defendant removed the case to

23    federal court, asserting federal-question jurisdiction on the ground that § 301 of the Labor

24    Management Relations Act (LMRA) preempts the claims.[2] The court previously dismissed two

25

26    [1] Second Am. Compl. (SAC) – ECF No. 58. Citations refer to material in the Electronic Case File
      (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents, except that
27    when the order cites the collective bargaining agreements (CBAs), it also cites the page numbers at the
      bottom of the CBAs.

28    [2] Notice of Removal – ECF No. 1.

ORDER – No. 21-cv-07874-LB

*United States District Court*
*Northern District of California*

earlier complaints on the ground that the claims were preempted because they either (1) involved rights conferred directly by the parties' collective bargaining agreement (CBA) or (2) substantially depended on the analysis and interpretation of the CBA.[3] The plaintiffs then filed a second amended complaint (SAC), and the defendant moved to dismiss it, again based on LMRA preemption.[4] Because the application of California law for the remaining claims does not depend on an analysis or interpretation of the CBA, the LMRA does not preempt the claims. The court remands the case to the Contra Costa County Superior Court.

**STATEMENT**

**1.  Fact Allegations About Job Duties and Claims**

The earlier complaints and the new complaint describe the putative class members' job duties that allegedly resulted in uncompensated hours, thereby allegedly driving down the overall wages below the minimum wage.

**1.1    Initial Complaint**

In the initial complaint, the plaintiff alleged that class members worked overtime hours because the defendant made them work off the clock "by, among other things, failing to accurately track and/or pay for all minutes actually worked; engaging, suffering, or permitting employees to work off the clock, including, without limitation, by requiring employees: to make phone calls or drive off the clock; detrimental rounding of employee time entries, and editing and/or manipulation of time entries to show less minutes than actually worked."[5] They also claimed an inability to take their meal and rest breaks.[6] As a result, the defendant did not pay employees the full wages due them on termination (including overtime and minimum wages and vacation pay), and their wage statements were inaccurate.[7] The employer did not reimburse costs that employees incurred in (1)

---

[3] Orders – ECF Nos. 31, 46.

[4] SAC – ECF No. 58; Mot. – ECF No. 59.

[5] Compl., Ex. A to Iskander Decl. – ECF No. 2-1 at 5 (¶¶ 10–11).

[6] *Id.* at 6 (¶¶ 12–13).

[7] *Id.* (¶¶ 14–15).

United States District Court
Northern District of California

buying mandatory work uniforms, safety equipment, and tools, (2) laundering mandatory uniforms, and (3) using personal cell phones for work.[8] The defendant also had a policy of not paying employees with compensation at their final rate of pay for unused vested vacation pay.[9]

The complaint had the following claims: (1) failure to pay overtime pay (claim one); (2) failure to pay minimum wages (claim two); (3) failure to provide meal and rest breaks (claims three and four); (4) failure to pay all wages on termination (claim five); (5) failure to provide accurate wage statements (claim six); (6) failure to reimburse employees for necessary expenditures in violation of Cal. Labor Code § 2802 (claim seven); (7) failure to pay vested vacation pay in violation of Cal. Labor Code § 227.3 (claim eight); and (8) a violation of California's Unfair Competition Law (UCL), Cal. Labor Code § 17200, predicated on the underlying Labor Code violations (claim nine).[10] The complaint did not mention the CBA or whether the plaintiff invoked the dispute-resolution process.

### 1.2   Amended Complaint

In the amended complaint, the plaintiff alleged that the defendant caused class members to work off the clock by "failing to accurately track and/or pay for all minutes actually worked; engaging, suffering, or permitting [class members] to work off the clock, including, without limitation, by requiring . . . Class Members: to come early to work and leave late [from] work without being able to clock in for all that time, to complete pre-shift tasks before clocking in and post-shift tasks after clocking out, to don and doff uniforms and safety equipment off the clock, and/or go through temperature checks off the clock; detrimental rounding of . . . time entries; and editing and/or manipulation of time entries to show less hours than actually worked." The off-the-clock tasks consisted of class members' "waiting in line, outside of the worksite, to have their temperatures checked, for a period within the Covid-19 pandemic, including, but not limited to, in the month of April of 2020," for periods up to 45 minutes because there was only one

---

[8] *Id.* at 6–7 (¶ 16).

[9] *Id.* at 7 (¶ 17).

[10] *Id.* at 10–20 (¶¶ 30–92).

United States District Court
Northern District of California

thermometer. After their shift, class members worked off the clock for about fifteen minutes to collect and store their tools (cables, torches, drills, and electrical saws). The class members also had to don and doff their uniforms off the clock, a task that took between fifteen and twenty minutes. This resulted in "occasional pay periods where employees were not paid for all time worked."[11] As a result, the defendant did not pay class members the full wages due them on termination, and their wage statements were inaccurate.[12]

The FAC had the following claims: (1) failure to pay minimum wages in violation of Cal. Labor Code § 1197; (2) failure to provide accurate wage statements in violation of Cal. Labor Code § 226(a); (3) failure to pay all wages on termination in violation of Cal. Labor Code § 201–02; and (4) unfair competition in violation of the UCL.[13] The complaint again did not mention the CBA or whether the plaintiff invoked the dispute-resolution process.

### 1.3   Second Amended Complaint

The SAC adds new allegations to support the position that the claims arise under state law and do not depend on the CBA. It begins with this paragraph:

> This is an action for unpaid wages and related claims arising out of GONSALVES & SANTUCCI, INC.'s failure to pay its employees for all hours worked. . . . [The plaintiff] has sought payment for hours that employees have worked off-the-clock — that is, work for which Defendants paid *no wages at all*. California law clearly establishes that an employer may not bargain around its statutory duty to pay for all hours worked. [The plaintiff]'s claims seek to vindicate nonnegotiable state-law rights that are independent of any right established by contract.[14]

The complaint reiterates that the plaintiff's minimum-wage claims "depend entirely on whether the time at issue constitutes compensable hours worked under the applicable state law," "do not arise in any manner from any CBA-based obligations," and "are based on a failure to compensate at all for certain hours worked by [the plaintiff] and Class Members."[15] The claims

---

[11] FAC – ECF No. 32 at 4–5 (¶ 10).

[12] *Id.* at 5–6 (¶¶ 11–12).

[13] *Id.* at 9–14 (¶¶ 26–52).

[14] SAC – ECF No. 58 at 2 (¶ 1).

[15] *Id.* at 6 (¶ 16).

do not depend on analysis of the CBA for reasons including, *inter alia*, that no actual dispute exists as to any CBA terms in connection with any of [the plaintiff]'s claims; there is no disagreement between [the plaintiff] and [the defendant] about the meaning or application of any relevant CBA-covered terms of employment; and there is no dispute between [the plaintiff] and [the defendant] regarding either the term "actual hours worked" and/or the term "show up expenses" as those terms are used in the CBA. The mere reference in the CBA to the terms "actual hours worked" and "show up expenses" does not in itself create a dispute about these terms.[16]

The terms "actual hours worked" and "show-up expenses" are not industry terms. The term "actual hours worked" does not have an arcane meaning requiring substantial interpretation. The CBA defines the term "show up expense" "in a manner that leaves no room for interpretation or augmentation by some nebulous, unspecified 'industry' meaning."[17]

The SAC defines the off-the-clock work exactly as the FAC defined it.[18]

The SAC has the following claims: (1) failure to pay minimum wages in violation of Cal. Labor Code § 1197 and applicable Wage Orders; (2) failure to provide accurate wage statements in violation of Cal. Labor Code § 226(a); (3) failure to pay all wages due on termination in violation of Cal. Labor Code §§ 201–02; and (4) unfair competition in violation of the UCL.[19]

## 2. The CBA

The plaintiff worked for the defendant on construction projects from February 2020 to December 2020 and was a member of a CBA governing ironworkers' employment. The 2017 CBA covered July 1, 2017, to June 30, 2020, and the 2020 CBA covered July 1, 2020, to December 31, 2024.[20]

The relevant sections of the CBA (recited in the earlier orders[21]) are as follows.

---

[16] *Id.* at 7 (¶ 17).

[17] *Id.* (¶ 18).

[18] *Id.* at 4–5 (¶ 11).

[19] *Id.* at 10–15 (¶¶ 31–57).

[20] *Id.* at 2 (¶ 3); Req. for Jud. Notice – ECF No. 14 (citing authorities that allow the court to take judicial notice of CBAs) & CBAs, Exs. A, B to *id.* – ECF Nos. 14-1, 14-2. The court previously took judicial notice of the CBAs. Order – ECF No. 31 at 2 n.4 (request was unopposed).

[21] *See, e.g.*, Order – ECF No. 31 at 2–4.

United States District Court
Northern District of California

United States District Court
Northern District of California

The CBA provides that the union is the employees' exclusive bargaining representative and sets forth the work covered under the CBA.[22] Covered work includes the minimum hourly and overtime compensation for the plaintiff and the putative class, scheduled wage increases, the hours of work, and meal and rest periods. For example, it defines eight hours as a day's work (occurring between the hours of 5 a.m. and 5 p.m.) and identifies overtime hours that will be paid at either 1.5 times or twice the hourly rate.[23]

The CBA defines how pay is distributed and the content of the pay statements. Payday is once a week on a day agreed to by the union and the employer, and wages are paid before quitting time in cash, by check, or by an electronic-fund transfer (among other means). Each payment of wages is accompanied by a wage statement that identifies the employer, the total earnings, the deductions (and their purposes), and net wages.[24]

The CBA also provides grievance procedures for disputes. There is a board for settlement of disputes, comprised of two union representatives and two employer representatives, and the CBA has a process (including the appointment of a fifth independent member if the board members cannot agree) for resolving disputes arising out of the "meaning and enforcement" of the CBA.[25]

### 3. Relevant Procedural History

The court held a hearing on the motion to dismiss on August 18, 2022. All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[26]

---

[22] 2017 CBA § 7 – ECF No. 14-1 at 12 (p. 1); 2020 CBA § 7 – ECF No. 14-2 at 13 (p. 1), 35 (p. 23).

[23] 2017 CBA § 6(B-2) – ECF No. 14-1 at 33–34 (pp. 22–23); 2020 CBA § 6(B-2) – ECF No. 14-2 at 30–31 (pp. 18–23).

[24] 2017 CBA § 8 – ECF No. 14-1 at 44–45 (pp. 33–34); 2020 CBA § 8 – ECF No. 14-2 at 44–45 (pp. 32–33).

[25] 2017 CBA § 28 – ECF No. 14-1 at 77–78 (pp. 66–67); 2020 CBA § 28 – ECF No. 14-2 at 75–76 (pp. 63–64).

[26] Consents – ECF Nos. 10, 12.

**ANALYSIS**

The defendant moved to dismiss the SAC under Federal Rule of Civil Procedure 12(b)(6) on the grounds that (1) the claims are preempted by the LMRA, and (2) the plaintiff was required to submit to the CBA's grievance procedures.[27] The court reconsiders its earlier orders, denies the motion to dismiss, and remands the case to state court.

**1. LMRA Preemption**

LMRA § 301 establishes federal jurisdiction for "[s]uits for violations of contracts between an employer and a labor organization." 28 U.S.C. § 185(a). It preempts any state claims based on alleged violations of collective-bargaining agreements between employers and labor organizations. *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 23 (1983). The test for preemption is whether resolution of the state claim requires the court to construe a provision of the CBA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405–06 (1988); *Dent v. Nat'l Football League*, 902 F.3d 1109, 1116–17 (9th Cir. 2018). If a claim is "founded directly on rights created by collective-bargaining agreements" or is "substantially dependent on analysis of a collective-bargaining agreement," then § 301 preempts it. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (cleaned up). But "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense." *Cramer v. Consol. Freightways, Inc.*, 255 F.3d 683, 691 (9th Cir. 2001) (en banc); *see Dent*, 902 F.3d at 1116 ("The plaintiff's claim is the touchstone of the § 301 analysis.") (cleaned up).

The preemption inquiry thus has two parts. First, a court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA.

---

[27] Mot. – ECF No. 59 at 8–12.

United States District Court
Northern District of California

If the right exists solely as a result of the CBA, then the claim is preempted." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059–60 (9th Cir. 2007). Second, if the right underlying the state claim exists independently of the CBA, then the court considers whether the right is "substantially dependent on analysis of a collective bargaining agreement." *Id.* (cleaned up).

The first claim is for a failure to pay minimum wages in violation of Cal. Labor Code § 1197. In sum, the allegations are that the employees were not paid at all for pre- and post-shift off-the-clock activity (such as changing into uniforms, undergoing pre-shift COVID-19 screening, and post-shift equipment storage).[28] If the predicate minimum-wage claim is preempted, the other claims fail too. Conversely, if it is not preempted, then there is no federal jurisdiction, and the case belongs in state court.

The plaintiff contends that the claims do not require an interpretation of the CBA's terms and thus are not preempted.[29] The claims are for the defendant's failure to pay the plaintiff and class members at all for hours worked off the clock. The plaintiff argues that when a claim is for unpaid minimum wages, a court "need only 'decide whether [the] defendants paid [the] plaintiff and putative class members minimum wages for all hours they worked, an inquiry that does not implicate any CBA provisions.'"[30] The defendant counters that the CBA has "alternate pay arrangements to those in the Labor Code," which means that wage payments arise under the CBA. It then cites the court's earlier orders and points out that the plaintiff's new allegations are legal conclusions, not fact allegations, and nothing alters the court's earlier conclusion that deciding the minimum-wage claim requires interpretation of CBA provisions.[31]

The earlier orders identified relevant CBA terms, including the hours of work, hourly rates, actual hours worked, and show-up expenses, and determined that resolution of the minimum-wage

---

[28] SAC – ECF No. 58 at 4–5 (¶ 11). That in turn meant that the defendant did not pay class members the full wages due them on termination and that their wage statements were inaccurate. *Id.* at 5–6 (¶¶ 12–13).

[29] Opp'n – ECF No. 61 at 8–14.

[30] *Id.* at 9 (quoting *Alexander v. Republic Servs., Inc.*, CIV. NO. 2:17-0644 WBS AC, 2017 WL 2189770, at *3 (E.D. Cal. May 18, 2017)).

[31] Mot. – ECF No. 59 at 8–10.

United States District Court
Northern District of California

claim required interpretation at least of "actual hours worked" and "show-up expenses."[32] At least initially, the complaint had claims (the overtime and rest-break claims, for example) that were preempted. But the pared-down case is much simpler: the plaintiff and the class members were not paid at all for work they did before and after their shifts, resulting in an alleged failure by the defendant to pay minimum wage. The CBA has dispute procedures, but the plaintiff can raise — and the court can resolve — the dispute under state law without interpreting the CBA. It is a straightforward task of determining the hours worked and calculating whether the plaintiff was paid minimum wage for those hours.

 To succeed on his claim under state law for a failure to pay minimum wages, the plaintiff must prove that (1) he performed work and (2) he was paid less than the minimum wage. He also must prove (3) the unpaid wages. Cal. Labor Code §§ 1194(a), 1197; Judicial Council of California Civil Jury Instructions (2022), CACI No. 2701. State law defines "hours worked" as "the time during which an employee is subject to the control of an employer." Cal. Code Regs. tit. 8, § 11160(2)(J). The state minimum wage dictates the result for the remaining two elements. There is no need to apply the CBA to resolve the claims because the court can look only to state law. The minimum-wage claim thus is not preempted. *Jimenez v. Young's Mkt. Co.*, No. 21-CV-02410-EMC, 2021 WL 5999082, at *8–9 (N.D. Cal. Dec. 20, 2021) ("[I]rrespective of how 'the wages,' or 'hours of work,' are determined under a CBA, [the] plaintiff is entitled to be paid a minimum wage . . . for all hours he was under the 'control' of [the] defendant."); *McGhee v. Tesoro Ref. & Mktg. Co.*, 440 F. Supp. 3d 1062, 1068–70 (N.D. Cal. 2020) (minimum-wage claim not preempted because "whether [the defendants] violated or complied with the CBAs has no import [for] whether they also violated . . . California law"); *Parker v. Cherne Contracting Corp.*, No. 18-CV-01912-HSG, 2019 WL 359989, at *5 (N.D. Cal. Jan. 29, 2019) ("the minimum wage claims do not rely on any interpretation of the terms of the CBA" and "[c]ourts have routinely held that California wage and hour claims . . . based on a failure to compensate at all for certain hours allegedly worked" are not preempted); *Tolentino v. Gillig, LLC*, No. 20-CV-07427-MMC, 2021 WL 121193, at *4 (N.D. Cal. Jan. 13, 2021)

---

[32] *See, e.g.*, Order – ECF No. 31 at 9 (citing the CBA).

United States District Court
Northern District of California

1    (minimum-wage claim not preempted where the plaintiff "allege[d] [that] there were hours he

2    worked for which he received no credit, i.e., no payment at all").

3        To the extent that the defendant argued at the hearing that the CBA governs the entire

4    employment relationship, including what work is compensable, that argument does not change the

5    result. State law also governs what work is compensable, and that analysis does not depend on

6    interpretation of the CBA. And even if in some sense the CBA governs the employment

7    relationship, the LMRA will not displace state law where state law concurrently and

8    comprehensively governs those aspects of the employment relationship that are the subject of the

9    plaintiff's claims. *See, e.g.*, *Cramer*, 255 F.3d at 690–91. In other words, "[e]ven [though] dispute

10   resolution pursuant to [the CBA], on the one hand, and state law, on the other, would require

11   addressing precisely the same set of facts, . . . the state-law claim can be resolved without

12   interpreting the agreement itself." *Id.* at 690.

13       Claims two (for failure to provide accurate wage statements), three (for failure to pay all wages

14   due on termination), and four (for unfair competition in violation of the UCL) are derivative of

15   claim one.[33] Because claim one is not preempted, the derivative claims are not preempted. *Fennix*

16   *v. Tenderloin Hous. Clinic, Inc.*, No. 20-CV-05207-DMR, 2020 WL 6462394, at *6 (N.D. Cal.

17   Nov. 3, 2020); *Dimercurio v. Equilon Enters. LLC*, No. 19-CV-04029-JSC, 2020 WL 227262, at

18   *5 (N.D. Cal. Jan. 15, 2020).

19       The defendant also contends that the LMRA preempts the claim for failure to pay all wages

20   due on termination "because the CBA has different pay arrangements."[34] It relies on *Gillette v.*

21   *Stater Bros. Mkts., Inc.,* No. 19-cv-1292-JVS, 2019 WL 8017735, at *6 (C.D. Cal. Sept. 23, 2019).

22   In the first order in the case, the court applied *Gillette* and held — as part of a larger analysis

23   involving preempted overtime and meal-and-rest-break claims — that when a CBA has alternate

24   pay arrangements to those in the Labor Code, wage payments arise under the CBA and not the

25   Labor Code. The *Gillette* case involved overtime and vacation-pay predicate claims similar to the

26

27   _____

     [33] SAC – ECF No. 58 at 12 (¶ 40) (claim two), 13 (¶ 48) (claim three), 14 (¶ 54) (claim four).

28   [34] Mot. – ECF No. 59 at 10.

United States District Court
Northern District of California

overtime and rest-break claims in the earlier complaint. Although a CBA can provide for different pay arrangements, *id.* (citing Cal. Labor Code §§ 201–04), the final-wages claim here is predicated on a failure to pay minimum wages, not the overtime and break claims in *Gillette* and the earlier complaint. Also, and as the plaintiff contends, unlike the overtime and break claims, resolution of final-wages claims predicated on a failure to pay minimum wages does not depend on an analysis of the CBA.[35] *See Livadas*, 512 U.S. at 124–25 ("The only issue raised by [the plaintiff's California final-wages] claim, whether [the defendant] 'willfully fail[ed] to pay' her wages promptly upon severance, . . . was a question of state law, entirely independent of any understanding embodied in the [CBA] . . . .").

### 2. CBA Grievance Procedures

The defendant also contends that the plaintiff did not exhaust the CBA's grievance procedures.[36] The plaintiff counters that the claims do not rely on the CBA and thus the plaintiff does not need to raise the claims under the CBA's grievance procedures.[37] Looking at the CBA's grievance procedures, and considering the briefing on the issue, nothing suggests a waiver of the employees' rights to a judicial forum as a prerequisite to seeking judicial relief. *See Castaneda v. Dura-Vent Corp.*, 648 F.2d 612, 617 (9th Cir. 1981); *Gunther v. N. Coast Coop., Inc.*, No. 20-CV-02325-RMI, 2020 WL 3394547, at *9–10 (N.D. Cal. June 19, 2020) (quoting *Wright v. Universal Mar. Serv. Corp.*, 525 U.S. 70, 79–80 (1998)). The waiver provisions in the CBA apply only to disputes arising out of the "meaning and enforcement" of the CBA.[38] There is no waiver precluding the claims here.

---

[35] Opp'n – ECF No. 61 at 13–14.

[36] Mot. – ECF No. 59 at 11–12.

[37] Opp'n – ECF No. 61 at 14–15.

[38] 2017 CBA § 28 – ECF No. 14-1 at 77–78 (pp. 66–67); 2020 CBA § 28 – ECF No. 14-2 at 75–76 (pp. 63–64).

United States District Court
Northern District of California

**3. Remand**

Because the LMRA does not preempt the remaining claims in the slimmed-down complaint, there is no subject-matter jurisdiction.[39] The court remands the case to the Contra Costa County Superior Court. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019); *Young v. Securitas Sec. Servs. USA, Inc.*, No. 17-CV-05342-JCS, 2018 WL 1142190, at *8 (N.D. Cal. Mar. 2, 2018).

## CONCLUSION

The court denies the motion to dismiss and remands the case to the Contra Costa County Superior Court. This resolves ECF No. 59.

**IT IS SO ORDERED.**

Dated: August 23, 2022

_____
LAUREL BEELER
United States Magistrate Judge

---

[39] Notice of Removal – ECF No. 1 at 2–4 (¶¶ 4–7) (asserting LMRA preemption as the basis for jurisdiction).